**Christine M. DONATO, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE CO., Defendant.**

**No. 92 C 1242.**

United States District Court, N.D. Illinois, E.D.

April 30, 1993.

---

**536**

Donald V. Young, Chicago, IL, for plaintiff.

Joseph J. Hasman, Ernest W. Irons, Sherri L. Giffin, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Christine M. Donato ("Donato"), a former Kemper Financial Services ("Kemper") employee who was initially granted and then later denied disability benefits under Kemper's Long Term Disability Benefit Plan ("Plan"), has filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, against Metropolitan Life Insurance Company ("MetLife"), which underwrote the Plan and served as its Claims Administrator. In response to Donato's claim for reinstatement of her benefits, MetLife argues not only that its disavowal of any current obligation to pay benefits was proper but also that it is entitled to a partial rebate of the amount that it had previously paid under its policy.

MetLife has now moved for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, its motion is granted.

### Background

Rule 56 imposes on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose a "genuine" issue does not exist unless record evidence would permit a reasonable

factfinder to adopt the nonmovant's view (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), and only facts that would prove outcome-determinative under substantive law are "material" (*Pritchard v. Rainfair, Inc.*, 945 F.2d 185, 191 (7th Cir.1991)). In both respects this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable" in the light most favorable to the nonmovant (*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991)).

Summary judgment motions in disability cases such as this one are often particularly suitable for disposition via summary judgment because of the ·absence of disputed factual issues.[1] Instead the parties typically disagree as to whether those uncontested facts meet the "disability" standard—whether it is a statute (as in Social Security cases) or an employee benefit plan (in ERISA cases such as this one) that sets the standard for the payment of benefits.

In this case the facts as to Donato's physical problems are not controverted. What *is* in dispute is the significance of those problems as to the existence or nonexistence of a disability under the Plan. Hence the following factual recital speaks briefly of those physical problems, then turns to the medical evaluations that served as the grist for MetLife's decisional mill.

Donato began working at Kemper as a legal secretary in March 1987. By the fall of 1990 she had begun to feel generally fatigued and to suffer from headaches. As time went on her condition worsened, and she began to feel unusually sensitive to such common stimuli as smoke, perfume and carpeting. But as she told Dr. Theron Randolph in 1990, a traditional allergist whom she had seen earlier had not diagnosed her as being afflicted by any allergies (D.Ex. E at 2).[2]

In consequence of his evaluation based on consultations beginning in October 1990, Dr. Randolph diagnosed Donato as "suffering from an acute susceptibility to environmental chemical exposures" that rendered her unable to work (Randolph Aff. ¶ 3). Dr. Randolph also concluded that continued exposure to common environmental chemicals would be likely to cause continued worsening of Donato's condition (*id.* ¶ 5).

In February 1991 Donato submitted a claim to MetLife for disability benefits, claiming that a severe allergic reaction to environmental chemicals had disabled her since July 17, 1990. As support she relied on diagnoses by Drs. Randolph and George Shambaugh, Jr.[3] In April 1991 MetLife approved Donato's claim effective January 17, 1991 (that date was six months after the claimed onset of the disability, as the Plan specified for long-term disability coverage). MetLife then began making payments to her (D. 12(m) ¶¶ 8–9).

In May 1991 MetLife forwarded Donato's medical records to a medical consulting firm, Underwriting Medical Actuarial Consultants, Inc. ("UMAC"), for review. UMAC initiated review of Donato's file by a board-certified internist and a roundtable including other doctors, one of them an allergist-immunologist. UMAC's May 31, 1991 report ("UMAC I," D.Ex. C) derided the makeup of Donato's evidence as "wordy, confusing, and provid[ing] little if any accepted medical information" (*id.* at 1) and explained its rationale (*id.* at 2–3):

1. That likelihood does not of course relieve the parties of their duties under this District Court's General Rule ("GR") 12. GR 12(M) requires each Rule 56 movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each factual statement. GR 12(N) imposes on the nonmovant the corresponding duty to respond point by point, with citations to the record in support of (1) any claimed dispute as to the movant's version of the facts and (2) any additional facts that the nonmovant chooses to assert. And the *Bank Leumi* inference-drawing principle still applies. This opinion's references to the parties' submissions will take the form "D. 12(m) ¶—" wherever Donato has not disputed MetLife's GR 12(M) statement, or "P. 12(n) ¶—" in the one place where Donato's GR 12(N) is cited here.

2. Donato also told Dr. Randolph that one doctor, a psychiatrist, had "thought she was trying to remove herself from society" (D.Ex. E at 2).

3. Dr. Shambaugh reported that Donato should avoid cigarette smoke, wall-to-wall carpeting and perfumes. He also related that she had tested positively to· intradermal applications of tobacco smoke and formaldehyde (D.Ex. C at 1).

The therapies and supposition discussed by [Donato's doctors] are not widely supported by the AMA, the American College of Physicians, or recognized medical bodies.

\*   \*   \*   \*   \*   \*

The evaluation, tests and diagnoses provided by Drs. Shambaugh and Randolph do not conform to medical standards.

UMAC I concluded "that no disability exists that would prevent this patient from performing the activities of daily living or her duties as a legal secretary" (*id.* at 3).[4]

In reliance on UMAC I MetLife terminated Donato's benefits. Its August 9, 1991 letter to Donato explained the bases of that decision and advised her as to how she could seek review of the determination.

At Dr. Randolph's recommendation Donato was later (in October 1991) hospitalized for detoxification at the Environmental Health Center in Dallas, Texas. There she entered the care of Dr. Gerald H. Ross, who performed a "blood analysis [that] confirmed chemical contamination, immune disfunction and ... evidence of toxic brain syndrome" (Ross Aff. ¶ 3). Dr. Ross concurred with Dr. Randolph that Donato was disabled (*id.* ¶ 4).

After bringing this action early in 1992, Donato submitted further documents (including Dr. Ross' evaluation) for MetLife's review. MetLife in turn forwarded those documents to UMAC for another review. This time a second roundtable of physicians, which again included an allergist/immunologist, issued a report reaching conclusions that were for all effective purposes coterminous with those found in UMAC I (D.Ex. F).

Needless to say, MetLife did not reverse course and reinstate Donato's benefits. This Court, which has jurisdiction of this action pursuant to ERISA and 28 U.S.C. § 1331, now reviews MetLife's decisions.

### Standard of Review

■ At the outset this Court is called upon to determine whether to apply a de novo standard (as Donato urges) or an "arbitrary and capricious" standard (as contended for by MetLife) in reviewing MetLife's denial of benefits. On that score MetLife clearly has the better of the argument.

Because ERISA does not prescribe any specific standard for reviewing a trust administrator's decision, *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110–11, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989) reconfirmed that the standard is to be drawn from trust law. After reviewing the general principles of trust law *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956 held that when an administrator or fiduciary interprets plan terms, ERISA calls for de novo review of that decision "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"—an exception that, given the ready ability of administrators to draft plans in that fashion, promises to swallow up the rule itself. And to that end, of course, no magic formulation (such as the necessity to use the word "discretion" itself) is required to grant discretion to an administrator (see *Petrilli v. Drechsel,* 910 F.2d 1441, 1447 (7th Cir.1990) and cases cited there).

But to return to *Bruch,* that opinion expressly defined its scope in these terms (489 U.S. at 108, 109 S.Ct. at 952 (emphasis added)):

The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits *based on plan interpretations.*

Given that self-limitation, it might perhaps be possible to distinguish the scope of review of an administrator's factual decisions (as contrasted with interpretive decisions) as an issue left unresolved by *Bruch.* As *Pierre v. Connecticut Gen. Life Ins. Co.,* 932 F.2d 1552, 1557 (5th Cir.1991) (citations omitted) put it:

[A] plan administrator has to make determinations that may be divided into two general categories. First, he must determine the facts underlying the claim for

---

4. UMAC I also rejected Dr. Shambaugh's reports, noting that his tests were inappropriate, "as both of these substances are toxic and will provoke reactions to anyone to whom they are applied" (D.Ex. C at 1–2).

benefits. Second, he must then determine whether those facts constitute a claim to be honored under the *terms* of the plan. *Bruch* addressed the proper standard of review that is to be given to the plan administrator's second determination. *Bruch* did not speak to the first.

Donato seeks to make just such a distinction in urging de novo review of MetLife's decision here.

In those terms the Plan here provides for benefits, after an employee has been "Fully Disabled" for six months, throughout the period of "Full Disability" while the employee remains under doctor's care for that condition. It defines capitalized terms:

> "Full Disability" or "Fully Disabled" means that because of a sickness or injury, you can not do your job.

To the extent that a line might arguably be drawn between plan-interpretive and factual decisions, the *Pierre* distinction is not the only way to make the demarcation. For example, the determination whether an employee has a "sickness" (where that term is left undefined in the Plan) might be viewed as interpretation, while the determination whether the employee "can not do [her] job" might be viewed as wholly factual.[5] But it is needless to parse matters any further in that respect. Though MetLife does not dispute the characterization of its decision as a factual one, that makes no difference to this Court's decision in any event.

To return to the case law once again, a number of courts (including our own Court of Appeals) have indeed—albeit in a quite different context, as explained in the rest of this paragraph—characterized the question of the scope of review of an administrator's factual determinations as one left open by *Bruch* (see, e.g., *Foster McGaw Hosp. v. Building Materials, Chauffeurs, Teamsters & Helpers Welfare Fund, Local 786*, 925 F.2d 1023, 1025 (7th Cir.1991); *Petrilli*, 910 F.2d at 1446–47; *Govindarajan v. FMC Corp.*, 932

F.2d 634, 637 (7th Cir.1991) (Manion, J., concurring); and *Pierre v. Connecticut Gen. Life Ins. Co.*, —— U.S. ——, 112 S.Ct. 453, 116 L:Ed.2d 470 (1991) (White, J., joined by Blackmun, J., dissenting from denial of certiorari)). But not surprisingly, all of those cases dealt not with the question now posed by Donato but with the flip side of that question: whether a less stringent standard of review is still called for when the trust instrument does *not* grant the administrator discretion to make such factual determinations (see also *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1180–81 (3d Cir.1991); *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1213–14 (4th Cir.1990)). None of the cases even intimates that de novo judicial review of an administrator's factual decisions is appropriate where the plan expressly *confers* discretion on the administrator to make such decisions.

Only a moment's thought is needed to see why that is so. Questions of plan interpretations—really another term for contract construction—are classically viewed as issues of law, traditionally reserved for courts. Little wonder, then, that *Bruch* viewed such questions as matters for fresh judicial scrutiny unless the contract itself directs otherwise. But as to questions of fact that a contract expressly assigns to a nonjudicial officer for decision, the normal judicial approach has always been to accord substantial respect to those decisions. It would turn matters on their head if, in the face of a contract that not only vests the factual decision-making power in someone but also gives that decisionmaker broad discretion in that respect, courts were to review the facts anew as though no decision had ever been made by the decisionmaker.

In this instance Donato does not and cannot dispute the vesting of discretion in MetLife—here is how the Plan (D.Ex. A at 16,

---

5. Under the just-suggested dichotomy what MetLife decided as to Donato would be labeled a "factual" decision, while under the *Pierre* formulation MetLife plainly engaged in "plan interpretation"—a decision directly controlled by *Bruch*. That type of hair splitting would have little (if anything) to commend it if it were sought to be used to require a de novo review of MetLife's decision. It will be recalled that *Bruch* itself expressly included "discretionary authority to determine eligibility for benefits" as part of the exception to de novo review, and that unquestionably describes what MetLife did here.

22) twice describes MetLife's determinative power over the quality of proof that must be tendered in support of any disability claim:

All proof must be satisfactory to us.

\*    \*    \*    \*    \*    \*

Proof must describe the event, the nature and the extent of the cause for which a claim is made; it must be satisfactory to us.

For the reason already discussed, then, it is worth a bit more detailed look at *Bruch*—if only to see whether there is any reason that the rule that it announced where a court reviews a plan determination by an administrator who has been given discretion to make such a law-oriented decision should not apply a fortiori to the same administrator's discretionary factual decisions.

As already indicated, *Bruch,* 489 U.S. at 111, 109 S.Ct. at 954 followed other ERISA cases in instructing courts to follow trust law principles in filling in ERISA's gaps—here, a failure to provide a standard of review. *Bruch, id.* quoted *Nichols v. Eaton,* 91 U.S. 716, 724–25, 23 L.Ed. 254 (1875) for the long held view—drawn from trust law—that federal courts should not intrude on the discretion that a trust vests in its administrator:

When trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a *discretion vested in them by the instrument* under which they act.

And perhaps most significantly, this opinion has already pointed out that *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956 specifically stated that a denial of benefits should not receive de novo review if the plan gives the administrator discretion "to determine eligibility for benefits" as well as "to construe the terms of the plan."

It should not come as a surprise that courts that have dealt squarely with the fact-decision issue have wasted no time in concluding that administrator or fiduciary decisions of that type are entitled to a high degree of deference when the plan confers discretion on the decisionmaker (see, e.g., *Arfsten v. Frontier Airlines, Inc. Retirement Plan for Pilots,* 967 F.2d 438, 440 (10th Cir.1992)). And in similar vein our own Court of Appeals has strongly respected such grants of discretion to decide factual issues (see, e.g., *Anderson v. Operative Plasterers' & Cement Masons' Int'l Assoc. Local No. 12 Pension & Welfare Plans,* 991 F.2d 356, 358–59 (7th Cir.1993)). Thus this Court's current scope of review is confined to whether MetLife's decision to deny benefits was arbitrary and capricious—that is, whether that decision was "downright unreasonable" (*id.* at 358, quoting *Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990)).

### MetLife's Determination

■ Little time or space needs to be devoted to dispatching Donato's argument that MetLife's decision was arbitrary. In that respect she maintains principally that MetLife's decision to terminate and deny her benefits was improper because it "completely disregarded documented diagnoses of plaintiff's treating physicians" (P.Mem. 6).

If that were really true, MetLife's decision might fail even under the arbitrary and capricious standard (see *Govindarajan,* 932 F.2d at 637). But Donato has pointed to no evidence that MetLife failed to consider her medical evidence. Instead MetLife's decision came down to a wholly permissible choice between the positions of Donato's Drs. Randolph and Ross on the one hand and that of an independent medical consultant (UMAC) on the other. MetLife's Claims Procedure Analyst Laura Sullivan ("Sullivan") explained in her affidavit that MetLife's determination that Donato was not fully disabled was based on UMAC's conclusions, the medical records and the terms of the Plan.[6] And that jibes with MetLife's

---

6. Donato argues that Sullivan's affidavit is improper Rule 56 evidence because it relies on hearsay from the UMAC reports. That argument demonstrates a complete misunderstanding of the hearsay concept as embodied in Fed.R.Evid. 801(c):

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

Here the UMAC reports are not offered to prove their truth, but rather to show the existence of professional opinions upon which MetLife based its decision.

course of action vis-a-vis Donato—that is, after it had initially approved her benefits, it terminated them only upon receipt of an impartial advisor's determination that Donato's evidence was not in conformity with medical standards.

Donato also suggests that this Court should override MetLife's determination because as Plan underwriter it operated under an inherent conflict—that is, it stood to profit from a denial of benefits. But under *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956 (quoting Restatement (Second) of Trusts § 187, Comment *d* (1959)) that conflict is only one "facto[r] in determining whether there is an abuse of discretion." And in this instance MetLife's action came only after a non-conflicted party strongly advised the termination and denial of benefits. Without something more in Donato's favor—something that she has clearly failed to provide—any asserted conflict does not require interference with MetLife's decision.

### *MetLife's Counterclaim*

MetLife not only resists Donato's claim for further benefits but also contends that Donato's previously-paid benefits should have been $4,640.13 lower because she had received that amount from the Social Security Administration ("SSA") in disability benefits. Donato does not make any substantive argument to the contrary,[7] nor does she attempt to refute MetLife's calculation, instead falling back on her own principal claim (P. 12(n) ¶ 21):

> The plaintiff denies an overpayment of long term disability benefits was made since defendant's decision to terminate benefits was erroneous.... Therefore, no overpayment of benefits was made by the defendant.

That argument collapses in light of the decision already reached in this opinion.

### *Conclusion*

No genuine issue of material fact exists as to whether MetLife acted in an arbitrary or capricious manner in denying Donato's dis-

ability benefits. Nor does a genuine issue of material fact exist as to whether MetLife is entitled to refund of its $4,640.13 overpayment to Donato. Accordingly MetLife is entitled to a judgment as a matter of law (1) dismissing Donato's action and (2) awarding it $4,640.13 in damages against Donato on its Counterclaim. This Court so orders.

---

7. Donato had signed an agreement under which any benefits paid by MetLife would be reduced by amounts paid or payable to Donato by SSA (D. 12(m) ¶ 18).