Christine M. DONATO, Plaintiff–Appellant,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 93–2340.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1993.

Decided March 22, 1994.

Donald V. Young, Young & Associates, Robert H. Mittelman (argued), Chicago, IL, for plaintiff-appellant.

Alvin Pasternak (argued), Michael A. DeMicco, Metropolitan Life Ins. Co., Law Dept., New York City, for defendant-appellee.

Before WOOD, Jr., EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiff, Christine Donato, brought an action against Metropolitan Life Insurance Company ("MetLife") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Ms. Donato, a former employee of Kemper Financial Services ("Kemper"), sought a reinstatement of benefits under Kemper's Long Term Disability Benefit Plan (the "Plan"), for which MetLife is the insurer and fiduciary. The district court granted summary judgment in favor of MetLife both on Ms. Donato's claim and on MetLife's counterclaim for overpaid disability benefits. Ms. Donato now appeals. For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

In March 1987, Ms. Donato began working as a legal secretary for Kemper. In the fall

of 1989, she started to experience frequent headaches and fatigue, and developed an extreme sensitivity to smoke, perfume, carpeting, and paper. Although a traditional allergist had previously found that she tested negative for allergies, Dr. George Shambaugh, a physician, diagnosed her problem in July 1990 as acquired hypersensitivity to formaldehyde and suggested a two-month leave. Ms. Donato's condition failed to improve. Therefore, in October 1990, she consulted Dr. Theron Randolph, a physician who specializes in "clinical ecology." He diagnosed her as being hypersensitive to a variety of common environmental chemicals and stated that continued exposure would worsen her condition. As a result, Ms. Donato submitted a claim in February 1991 for disability benefits under the Kemper Plan.

The Kemper Plan is an employee welfare benefit plan as defined in ERISA. *See* 29 U.S.C. § 1002(1). The Plan is underwritten through a policy of group insurance issued by MetLife. The Plan provides that an employee who is either "fully disabled" or "totally disabled" shall receive monthly benefits equal to the lesser amount of 60% of the employee's basic monthly earnings or 70% of the basic monthly earnings less other income benefits. The Plan makes clear, however, that monthly disability benefits are to be reduced by the amount of disability benefits to which the employee is entitled under the Social Security Act. The Plan states that " 'Full Disability' and 'Fully Disabled' means that because of a sickness or an injury, you cannot do your job." R. 23, Exh. A at 3. The Plan defines " 'Total Disability' " or " 'Totally Disabled' " as meaning that, owing to sickness or an injury,

(a) you can not do your job; and

(b) you can not do any other job for which you are fit by your education, your training or your experience.

R. 23, Exh. A at 3. Further, the Plan states that disability benefits will be paid when MetLife receives proof of claim, and that "[a]ll proof must be satisfactory to us." R. 23, Exh. A at 16. The Plan also states that proof of claim "must describe the event, the nature and the extent of the cause for which a claim is made; it must be satisfactory to us." R. 23, Exh. A at 22.

In April 1991, MetLife approved Ms. Donato's February 1991 claim for disability benefits, and did so retroactive to January 17, 1991 (six months after the asserted onset of the disability, July 1990, in accordance with the Plan). MetLife began to make payments to Ms. Donato at that time. In May 1991, MetLife submitted all of Ms. Donato's medical records, including the reports of Drs. Shambaugh and Randolph, to an independent medical consulting agency, Underwriting Medical Actuarial Consultants ("UMAC"). On May 31, 1991, UMAC issued a report ("UMAC I"), which stated that Ms. Donato's file had been reviewed by a board-certified internist and a roundtable of physicians, including an allergist-immunologist.

UMAC I stated that Ms. Donato's medical records were "wordy, confusing, and provide[d] little if any accepted medical information." R. 23, Exh. C at 1. It further stated that the "therapies and suppositions discussed by [Drs. Shambaugh and Randolph, Ms. Donato's medical care providers,] are not widely supported by the AMA, the American College of Physicians, or recognized medical bodies." R. 23, Exh. C at 2–3. Finding that the "evaluation, tests and diagnoses provided by Drs. Shambaugh and Randolph do not conform to medical standards," UMAC I concluded that "no disability exists that would prevent this patient from performing the activities of daily living or her duties as a legal secretary." R. 23, Exh. C at 3. As a result, MetLife terminated Ms. Donato's benefits. MetLife informed her of this decision in an August 9, 1991 letter.

On August 25, 1991, Ms. Donato wrote to MetLife and requested a review of the denial of her benefits. On September 5, 1991, she forwarded MetLife a copy of the Social Security Administration's decision to grant her disability benefits. MetLife responded by informing Ms. Donato and later her attorney that, despite approval of Social Security benefits, MetLife would adhere to its previous decision. MetLife also stated that it would consider any additional relevant information Ms. Donato obtained. In the fall of 1991, Ms. Donato saw another physician, Dr. Ger-

ald Ross, at the Environmental Health Center in Dallas, Texas. Dr. Ross arrived at essentially the same conclusion as Drs. Shambaugh and Randolph. Ms. Donato sent Dr. Ross' report to MetLife. MetLife forwarded this additional information to UMAC for a second review by a roundtable of physicians and a board-certified allergist-immunologist. On August 4, 1992, UMAC issued another report ("UMAC II"), which stated that the information Ms. Donato had submitted failed to adduce any medical proof to support the conclusion of Ms. Donato's physicians that she was disabled.

### B. District Court Proceedings

Because Ms. Donato had filed suit in early 1992 under ERISA, 29 U.S.C. § 1132(a)(1)(B),[1] litigation was well underway when, pursuant to UMAC II, MetLife determined conclusively to deny Ms. Donato disability benefits. Thus, following the issuance of UMAC II, MetLife moved for summary judgment both on Ms. Donato's ERISA claim and on MetLife's counterclaim for repayment of overpaid disability benefits. MetLife's counterclaim was based on the Kemper Plan's express reduction of disability benefits by the amount of Social Security benefits received and on an agreement to that effect that Ms. Donato had signed in February 1991.

On April 30, 1993, the district court granted summary judgment in favor of MetLife. *Donato v. Metropolitan Life Ins. Co.,* 822 F.Supp. 535 (N.D.Ill.1993). The district court determined that, because of the deferential language set forth in the Kemper Plan, it would review MetLife's decision on Ms. Donato's benefits only to determine whether that decision had been arbitrary and capricious. Concluding that it was MetLife's prerogative to rely on the determination of independent medical consultants (UMAC) rather than on Ms. Donato's clinical ecology physicians, the court held that MetLife's decision could not be deemed arbitrary and capricious. In addition, because Ms. Donato essentially failed to contest MetLife on its

counterclaim, the court entered judgment in favor of MetLife for $4,640.13.

## II

### DISCUSSION

On appeal, Ms. Donato submits that the district court erred in granting summary judgment to MetLife. Specifically, she argues that the district court should not have given deference to MetLife's decision to deny her benefits by applying an arbitrary and capricious standard of review, but rather should have reviewed MetLife's decision de novo. Ms. Donato asserts in the alternative that, even under the deferential standard of review, the district court erred in concluding that no genuine issue of material fact existed as to whether MetLife's decision was arbitrary and capricious. In addition, Ms. Donato claims that MetLife's letter of August 9, 1991, in which MetLife informed her of its decision, did not satisfy the requirements for such letters as set out in ERISA and its corresponding regulations. Finally, with respect to MetLife's counterclaim, Ms. Donato states that, because her benefits were wrongfully terminated, she does not owe MetLife any overpaid benefits. We now review the district court's decision on each of these issues de novo to determine whether any genuine issue of material fact exists and whether MetLife was entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In doing so, we draw all inferences in favor of Ms. Donato. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Anderson v. Operative Plasterers' & Cement Masons' Int'l,* 991 F.2d 356, 357 (7th Cir.1993).

### A. Standard of Review

■ Ms. Donato submits that the district court erred in reviewing MetLife's decision to deny her long-term benefits under the deferential arbitrary and capricious standard. To resolve this issue, we look to *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In that

---

1. 29 U.S.C. § 1132(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

case, the Supreme Court was called on to set out the appropriate standard of review in ERISA cases arising under 29 U.S.C. § 1132(a)(1)(B), the subsection under which challenges to benefit eligibility determinations are brought. The ERISA statute itself had not given a standard of review. Applying principles of trust law, the Court held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956. As a result, our inquiry in determining the appropriate standard of review in this case is limited to ascertaining whether the Kemper Plan contained language granting MetLife such discretionary authority.[2] *See Anderson,* 991 F.2d at 358; *Halpin v. W.W. Grainger, Inc.,* 962 F.2d 685, 688 (7th Cir. 1992); *Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990); *Egert v. Connecticut Gen. Life Ins.,* 900 F.2d 1032, 1035 (7th Cir.1990).

In this case, the Plan at issue states that MetLife will pay long-term disability benefits "upon receipt of proof," but that "[a]ll proof must be satisfactory to us." R. 23, Exh. A at 16. Further, the Plan states that proof of claim "must describe the event, the nature and the extent of the cause for which a claim is made; it must be satisfactory to us." R. 23, Exh. A at 22. Ms. Donato asserts that

this language does not contain language expressly stating that MetLife had discretionary authority over benefits decisions made pursuant to the Plan. She therefore argues that we should review MetLife's denial of her benefits de novo. In response, MetLife asserts that, under the caselaw of this circuit, the language set forth in the Plan indicates a grant of discretionary authority to the fiduciary, MetLife. As a result, MetLife argues, this language requires us to defer to MetLife's decision by reviewing it only for unreasonableness, i.e., whether the decision was arbitrary and capricious.

We cannot accept Ms. Donato's contention that a Plan's language must contain an "explicit" grant of discretionary authority in order for a discretionary standard of review to apply. We rejected such an approach in *Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust,* 901 F.2d 1369, 1371 (7th Cir.1990), in which we stated that, in determining whether discretionary authority exists, "magic words (such as 'the committee has discretion to . . .') are unnecessary." More to the point, we agree with MetLife that the language in the Plan is very close to language that we previously have held furnishes sufficient discretion to apply the arbitrary and capricious standard of review. *See Bali v. Blue Cross & Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir.1989) (setting out plan clause stating that disability would be "determined on the

---

**2.** In determining the standard of review in this case, the district court elaborated on the possible significance of whether MetLife's determination under review in this case is one of fact or one of plan interpretation. *Cf. Pierre v. Connecticut Gen. Life Ins. Co.,* —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (White, J., dissenting from denial of certiorari) ("Since our decision in *Bruch,* a disagreement has developed in the Courts of Appeals concerning the standard of review to be applied when a benefits decision turns on the facts of the case, rather than the interpretation of the terms in the ERISA plan."). There is some basis in *Bruch* that this distinction is of import. Early in its discussion, the *Bruch* Court noted that its holding was "limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denial of benefits *based on plan interpretations.*" *Bruch,* 489 U.S. at 108, 109 S.Ct. at 953 (emphasis added). However, later in the opinion, the Court restated its holding without limiting it to denials

of benefits based "on plan interpretations." *See id.* at 115, 109 S.Ct. at 468 (quoted above in text). As we stated in *Petrilli v. Drechsel,* 910 F.2d 1441, 1446 (7th Cir.1990), "[t]his later recitation of the holding strongly suggests that the Court intended *de novo* review to be mandatory where administrators were not granted discretion, regardless of whether the denials under review were based on plan interpretations." More important, the rationale underlying *Bruch* was based "on whether the written terms of the plan confer discretion on the administrator, and not on the type of decision—factual or interpretive—that the administrator is rendering." *Id.* In this case, therefore, we do not place emphasis on the nature of MetLife's decision. *See also Govindarajan v. FMC Corp.,* 932 F.2d 634, 637 (7th Cir.1991) (Manion, J., concurring) (stating that there is "no basis for distinguishing between factual and interpretive questions when determining the proper standard of review").

basis of medical evidence satisfactory to the Committee"). We therefore shall review MetLife's decision to deny Ms. Donato benefits only to determine whether that decision was arbitrary and capricious, which is to say "downright unreasonable." *Fuller,* 905 F.2d at 1058; *cf. Van Boxel v. Journal Co. Employees Pension Trust,* 836 F.2d 1048, 1052 (7th Cir.1987) (stating that "the arbitrary and capricious standard may be a range, not a point").[3]

### B. *Review of MetLife's Decision to Deny Benefits*

■ Our review of MetLife's decision under the arbitrary and capricious standard is a review and not a rubber stamp. Nevertheless, we must conclude that MetLife's determination to deny Ms. Donato benefits was not unreasonable. As the district court stated, MetLife's decision simply came down to a permissible choice between the position of UMAC, MetLife's independent medical consultant, and the position of Ms. Donato's clinical ecologists, Drs. Shambaugh, Randolph, and Ross. *Cf. Allison v. Dugan,* 951 F.2d 828, 833 (7th Cir.1992) (finding decision not to be arbitrary and capricious where challenger to denial of benefits could not show that the denial decision " 'was so implausible based on the evidence that it could not be ascribed to a difference in view' ") (citation omitted). The position of UMAC was that Ms. Donato's hypersensitivity, based on clinical ecology, which is not supported by the AMA, the American College of Physicians, or any other recognized medical body, was not an acceptable ground for finding total disability. Plainly, MetLife acted entirely reasonably in denying benefits for a

disability based on such a questionable medical theory.

■ We need to touch briefly on two related matters. First, Ms. Donato emphasizes that she was granted Social Security benefits. At oral argument, her counsel asserted that, although MetLife was not bound to follow Social Security's determinations, it would have been arbitrary and capricious for MetLife not to have considered any medical evidence contained in that file. Whatever the merits of such an assertion, the fact is that, although MetLife was apprised of this contrary determination, the Social Security file was never before MetLife in making Ms. Donato's benefits determination, and MetLife was bound only to consider what evidence and information it had before it. Second, Ms. Donato maintains that, even if there is no scientific basis for a disability based on an environmental illness, a psychiatric basis for her symptoms should render her eligible for disability benefits. Again, Ms. Donato failed to submit any medical proof that she is psychiatrically disabled. UMAC II noted that her medical records indicated that a psychiatrist found Ms. Donato to be severely depressed; UMAC II also pointed out that the types of symptoms associated with environmental illness may be explained by a psychiatric disorder. However, no clinical evidence linking Ms. Donato's symptoms with such a psychiatric disorder was ever submitted. Nor was any evidence submitted to MetLife that would support the conclusion that Ms. Donato's depression, regardless of treatment, would constitute a total disability.

### C. *MetLife's Denial Letters*

■ ERISA contains procedure and notification requirements that MetLife had to sat-

---

**3.** Ms. Donato argues that, in making a determination on her long-term disability benefits application, MetLife was under a conflict of interest because it acted as both the plan fiduciary and insurer. She therefore submits that, even if we do not review MetLife's decision de novo, we should accord little to no deference to MetLife's benefits determination. We do not agree. The Supreme Court announced in *Bruch* that a fiduciary operating under a conflict of interest is one factor to weigh in determining whether that fiduciary's decision was arbitrary and capricious. *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956. This is a variation on a theme we noted in *Van Boxel,*

836 F.2d at 1052—that the arbitrary and capricious standard of review is a sliding scale standard that should be "more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is." Here, we note that, although it served as both the fiduciary and insurer, MetLife terminated Ms. Donato's benefits only after an independent medical consultant concluded (twice) that Ms. Donato was not disabled and that benefits should be denied. Indeed, prior to the outside consultation with UMAC, MetLife was paying Ms. Donato disability benefits.

isfy when it denied Ms. Donato's claim for benefits: The statute required MetLife to give Ms. Donato the "specific reasons" for the denial and to afford her an opportunity for a "full and fair review" of the denial decision. 29 U.S.C. § 1133.[4] The regulations promulgated pursuant to the statute set forth with greater specificity what the initial notice of a claim denial must contain:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f). "These requirements insure that when a claimant appeals a denial to the plan administrator, he will be able to address the determinative issues and have a fair chance to present his case." *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir.1992).[5]

Ms. Donato submits that none of the letters MetLife sent to her stating and later affirming its decision to deny long-term disability benefits complied with the requirements of 29 C.F.R. § 2560.503–1(f). The fullest of MetLife's letters, and the one on which the parties focus, is the original denial letter of August 9, 1991. It states as follows:

Dear Ms. Donato:

We have completed our evaluation of your claim to determine your eligibility for continued Long Term Disability benefits.

Your policy states:

"Full Disability," "Fully Disabled," "Total Disability" or "Totally Disabled" means that because of a sickness or an injury, you can not do your job.

We sent all medical information in your file to be reviewed by a Board certified Internist and a Physician Roundtable that included an Allergist–Immunologist. They have determined that the medical information on file does not substantiate total disability from your own job as a Legal Secretary.

Based upon this information, you are no longer eligible for Long Term disability benefits. Your benefits will be paid through August 6, 1991, the date our decision was made.

You may request a review of the claim by writing directly to Group Insurance Claims Review, Metropolitan Life Insurance Company, at the address indicated in this letter. You should include the information contained in the Claim Identification shown above. When requesting this review, you should state the reason you believe the claim was improperly denied and you may submit any data, questions or comments to Metropolitan you deem appropriate. Metropolitan will reevaluate all the data and you will be informed in a timely manner of our findings.

R. 23, Exh. D.

It is clear that MetLife's letter satisfies subsections (2) and (4) of 29 C.F.R. § 2560.-

---

**4.** The statute reads:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

**5.** *See also Matuszak v. Torrington Co.*, 927 F.2d 320, 323 (7th Cir.1991) (stating that the requirements enable a claimant to prepare sufficiently "for any further administrative review, as well as any appeal to the federal courts"); *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 392 (7th Cir.1983) ("Describing additional information needed and explaining its relevance, as required by subsection (3) of 29 C.F.R. § 2560.503–1, enables a participant both to appreciate the fatal inadequacy of his claim as it stands and to gain a meaningful review by knowing with what to supplement the record.").

503–1(f): The letter specifically references the pertinent plan provision and gives information on the steps to be taken to submit the claim for review. However, the letter fails to meet subsections (1) and (3) of § 2560.503–1(f). First, with respect to subsection (1), although the letter informed Ms. Donato that the material in her file did not substantiate her claim, it failed to specify why that was so. It would not have taken a great deal of time or effort for MetLife to have discussed briefly the basis underlying MetLife's decision, i.e., that clinical ecology is not widely recognized as valid in the medical community. MetLife's conclusory statement was not enough under the regulations. *See Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 392 (7th Cir. 1983) ("The 'reason' given for denial is not a reason but a conclusion.").

Second, with respect to subsection (3) of § 2650.503–1(f), MetLife's letter makes only a mere "blanket request" for additional information. *Halpin*, 962 F.2d at 691. No effort is made either to describe what information was needed or to explain why such information was needed. Under our caselaw, MetLife had to describe specifically the nature of the additional information needed and the reason it was necessary. *See id.* (stating that in order "to satisfy the requirement of a description of any additional material or information necessary for the claimant to perfect the claim, the letter would have to specify the kind of additional medical information needed"); *Wolfe*, 710 F.2d at 393 (stating that "a fiduciary (or its agent) ought to specify with some detail what type of information would help to resolve these questions, and how the applicant should present such information").

■ Not all procedural defects, however, will upset a fiduciary's decision. *Id.* Substantial compliance with the regulations is sufficient. *Halpin*, 962 F.2d at 689. In determining whether there has been substantial compliance, the purpose of 29 U.S.C. § 1133 and its implementing regulations, 29 C.F.R. § 2560.503–1(f), serves as our guide: "was the beneficiary supplied with a statement of

reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Id.* at 690. Taken alone, MetLife's letter does not satisfy the purpose of the statute and the regulation. However, MetLife's correspondence was not the only documentary material Ms. Donato and her counsel possessed. At oral argument, counsel for MetLife stated that Ms. Donato and her counsel had received the UMAC reports, and Ms. Donato's counsel did not say otherwise in rebuttal or in the briefs.

Upon examination of the UMAC reports, we conclude that they permitted a sufficiently clear understanding of MetLife's decision with respect to Ms. Donato's benefits claim to afford her a later opportunity for a full and fair review. First, UMAC I stated specifically the reasons for MetLife's denial of Ms. Donato's claim for disability benefits, i.e., the lack of recognition in the medical community of clinical ecology. Second, UMAC I satisfactorily informed Ms. Donato of the additional information she needed to submit. UMAC I stated in plain terms that, because clinical ecology is not widely recognized, the information Ms. Donato had submitted could not form the basis of a successful disability application. By necessary implication, UMAC I invited Ms. Donato to submit a report concerning the disability she alleged in her application from a medical professional utilizing a recognized diagnostic methodology. She failed to do so.

■ Ms. Donato submits that, because UMAC II suggested that symptoms like Ms. Donato's may be explained by the existence of a psychiatric disorder and notes that she suffered from depression, her original notification of denial was deficient for never having alluded to the possibility of a psychiatric basis for her symptoms. ERISA and its implementing regulations, however, did not require MetLife to assess an alternative diagnosis to the one Ms. Donato submitted for disability benefits—a chemical-based hypersensitivity to common environmental elements—much less to determine whether that

alternative diagnosis constitutes a total disability. We therefore believe that Ms. Donato was given a statement of reasons that gave her a sufficiently clear understanding of MetLife's position to permit effective review. *See Halpin,* 962 F.2d at 690.[6]

### D. *MetLife's Counterclaim*

MetLife brought a counterclaim against Ms. Donato for overpayment of disability benefits. MetLife contends that, because the Plan and a February 1991 agreement between MetLife and Ms. Donato state that disability benefits are to be reduced by the amount of benefits received from Social Security, Ms. Donato must repay MetLife $4,640.13, the amount she has received from Social Security. Ms. Donato neither argues substantively to the contrary nor disputes MetLife's figure. Instead, she argues that, because MetLife erroneously terminated her benefits, MetLife owes *her* money. In light of our decision above, we conclude that the district court correctly entered judgment for MetLife on its counterclaim.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**6.** We need not determine definitively whether Ms. Donato can submit a claim for benefits based on a psychiatric disability. Such a claim would require objective psychiatric evidence linking her symptoms to a psychiatric disorder that is totally disabling. Benefit plans falling under ERISA are construed according to the plain language of the benefit plan. The Kemper Plan does not address explicitly the timeliness of subsequent submissions of evidence concerning disability. It does not appear, therefore, that Ms. Donato would be precluded from submitting additional information.