# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1493

_____

| | | |
|---|---|---|
| Judy DuMond, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Centex Corp., a Delaware corporation; | * | |
| Centex Service Co., a Delaware | * | |
| corporation; Centex Real Estate | * | |
| Corporation, a Delaware corporation; | * | |
| Great-West Life Annuity Insurance | * | |
| Company, a Canadian Corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  December 18, 1998
Filed:  April 9, 1999

_____

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

Judy DuMond appeals the district court's[1] order denying her motion for summary judgment and granting summary judgment to the defendants Centex

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

Corporation, Centex Service Company, and Centex Real Estate Corporation (collectively Centex). DuMond sued Centex and Great-West Life Insurance Company (Great-West) under the Employment and Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA) when they denied her claim for long-term disability benefits. We affirm.[2]

## I.

From January 1983 to December 1995, DuMond was employed as a real estate broker and agent at the Minnesota division of Centex Real Estate Corporation. Centex Corporation and Centex Service are sponsors of an employee welfare benefit plan (Plan) that offers both short-term disability (STD) and long-term disability (LTD) benefits. DuMond was a participant in the Plan. Centex contracted with Great-West to administer the Plan. Great-West, as a third party administrator, supervised the initial administration of claims and payment of benefits to claimants. Michael Albright, a Centex employee, served as the Plan Administrator and handled appeals from Great-West's decisions.

The Plan provides LTD benefits for employees who become totally disabled. The Plan defines totally disabled as "the complete inability of a covered employee because of accidental bodily injury or sickness to engage in any occupation or employment for remuneration or profit for which he is reasonably suited by reason of education, training or experience." Plan § 4.2(2)(c). The Plan defines "sickness"

[2]DuMond appeals only the portion of the district court's order denying her motion for summary judgment and granting Centex's motion for summary judgment. The district court granted Great-West's motion for summary judgment on the ground that Great-West, as an agent for the plan administrator, was a non-fiduciary and thus not a party that could be sued. See J.A. at 487-89 (Hr'g on Mot. for Summ. J.) (hereinafter "Hearing"). DuMond does not challenge this ruling on appeal.

-2-

as "an <u>organic disease</u>, psychosis, or pregnancy." Plan § 4.2(2)(b) (emphasis added).[3]

In February 1994, DuMond began to experience various symptoms, including fatigue, headaches, inability to concentrate, dizziness, and chest pains. According to DuMond, these symptoms rendered her unable to do her job. DuMond sought treatment from two doctors: Dr. Elizabeth Heefner, her gynecologist, and Dr. John Baumgartner, an endocrinologist. Dr. Heefner referred DuMond to Dr. Jean Eckerly, a physician specializing in preventive medicine and vascular disease. Both Drs. Heefner and Eckerly concluded that DuMond suffered from Chronic Fatigue Syndrome (CFS). Dr. Baumgartner concluded that DuMond suffered from Hypoglycemia and Hypothyroidism.[4] DuMond applied for and received STD benefits under the Plan for the period of April 1, 1994 through September 30, 1994.

In February 1995, DuMond was still experiencing the same symptoms and applied for LTD benefits, claiming she was totally disabled and still unable to work due to CFS. As part of her application, DuMond submitted an attending physician's statement from Dr. Eckerly. Dr. Eckerly's statement diagnosed DuMond with CFS and stated she was totally disabled beginning in April 1994. Dr. Eckerly also stated that there was possible toxicity due to root canal materials and that DuMond's immune system should be monitored for improvement following treatment of her dental problems. Shortly before submitting her LTD claim, DuMond had dental surgery to remove the suspect materials. This treatment was completed in June 1995.

---

[3]"Organic disease" is not defined in the Plan. An "organic disease" is "one associated with demonstrable change in a bodily organ or tissue." Dorland's Illustrated Medical Dictionary 487 (28th ed. 1994).

[4]DuMond states that Dr. Baumgartner also concluded she had CFS. However, Dr. Baumgartner's report, which DuMond cites as supporting this conclusion, does not mention CFS. Instead, it lists her diagnoses only as Hypoglycemia and Hypothyroidism. <u>See</u> J.A. at 248. Dr. Baumgartner's handwritten notes, which accompany his report, are illegible.

On May 30, 1995, Great-West denied DuMond's claim for LTD benefits, stating that the current documentation did not support the diagnosis of CFS and that there was no evidence that she could not return to work. Great-West invited DuMond to submit additional objective medical information.

In June 1995, DuMond submitted reports from Dr. Heefner, Dr. Baumgartner, two oral surgeons, and a psychotherapist, as well as the results of several laboratory tests. Great-West again denied DuMond's claim, stating that there was insufficient evidence to support the diagnosis of total disability due to CFS. Because some of her records indicated possible psychiatric problems, Great-West requested that DuMond be examined by a psychiatrist. This examination ruled out any possible psychiatric condition and concluded that DuMond could return to work from a psychiatric standpoint. After reviewing the psychiatrist's report, Great-West notified DuMond that it was denying her claim because there was no support for her claim that she was totally disabled. Great-West again invited DuMond to submit additional medical information. Great-West also informed DuMond, in response to her inquiry, that her medical records would have to fulfill the criteria identified by the Centers for Disease Control (CDC) for a CFS diagnosis to obtain LTD coverage.

In December 1995, DuMond submitted additional medical information to Great-West. This additional information included a letter from Dr. Eckerly (December letter), which stated that DuMond was totally disabled from work from February 1994 to September 1995.[5] She stated that her initial diagnosis was CFS, "which is a diagnosis of exclusion."[6] J.A. at 319. She then stated "[c]learly

_____

[5]It is undisputed that DuMond had totally recovered from her illness by the fall of 1995.

[6]Diagnosis of exclusion means a "recognition of a disease by excluding all other known diseases." Dorland's Illustrated Medical Dictionary, supra, at 458. CFS is a diagnosis of exclusion because it is diagnosed by evaluating symptoms and

-4-

[DuMond] does not have Chronic Fatigue Immune Deficiency Syndrome at this time, and in retrospect, her fatigue was caused by immune suppression from a dental source." Id.[7] DuMond also included a letter from Dr. Heefner, the only other doctor to conclude that DuMond suffered from CFS, which agreed with the assessment in Dr. Eckerly's December letter.

On February 21, 1996, Great-West again denied DuMond's claim because the medical evidence did not support a finding of total disability due to a medical condition. Great-West also hired an independent medical review firm which reviewed DuMond's records and agreed with Great-West's assessment.

In July 1996, DuMond appealed Great-West's decision to Albright. Albright submitted DuMond's records to another independent medical review firm. This anonymous, double-blind review was conducted by Dr. Myron Liebhaber, a physician with a specialty in allergy/immunology. Dr. Liebhaber concluded that DuMond did not have CFS because she did not meet the CDC criteria for diagnosing CFS. Based on Dr. Liebhaber's report and DuMond's doctors' reports, Albright denied DuMond's appeal.

DuMond filed this action in December 1996. DuMond, Centex and Great-West

_____

eliminating other causes of fatigue. See 2 The Gale Encyclopedia of Medicine 713 (Donna Olendorf et al. eds., 1999); see also Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998). In the United States, doctors commonly refer to the CDC guidelines in attempting to determine whether a patient has CFS. See The Gale Encyclopedia of Medicine, supra, at 713. We note that Centex does not dispute that CFS is an organic disease under the Plan; rather, Centex argues only that DuMond failed to satisfy the CDC's diagnostic criteria for CFS.

[7]Dr. Eckerly also stated DuMond's other diagnoses included chronic inflammation, fibromyalgia, hypothyroidism, adrenal insufficiency, magnesium deficiency and arthralgia.

submitted cross-motions for summary judgment based on a stipulated record. The district court denied DuMond's motion for summary judgment and granted Centex's and Great-West's motions for summary judgment. DuMond filed a timely appeal.

## II.

We review a grant of summary judgment de novo. See Aucutt v. Six Flags Over Mid-Am., Inc., 85 F.3d 1311, 1315 (8th Cir. 1996). In reviewing a grant of summary judgment, this Court views the record in the light most favorable to the non-moving party to ensure there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. Id.[8]

## A.

Our inquiry on appeal concerns the final decision by Albright, the Plan administrator, that DuMond was not eligible for LTD benefits. This Court generally considers only the evidence that Albright had before him when he made his decision. Cf. Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998) (absent good cause, district court should not ordinarily consider information outside the record on de novo review to "ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan

---

[8]The parties contest the standard of review to be employed in evaluating Albright's decision. The district court reviewed Albright's decision for an abuse of discretion. See J.A. at 489-90 (Hearing). DuMond argues that this was error, and the district court should have reviewed Albright's decision de novo. Depending on the degree of discretion granted to a plan administrator, the administrator's decision may be reviewed de novo or for an abuse of discretion. See Bounds v. Bell Atlantic Enters. F.L.T.D. Plan, 32 F.3d 337, 339 (8th Cir. 1994) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). We need not decide which standard of review governs this case, however, as our conclusion would be the same under either standard of review.

administrators" (quotations and citations omitted)).

In making his decision, Albright considered DuMond's medical records and Dr. Liebhaber's report. DuMond claims that her medical records clearly support a diagnosis of total disability due to CFS, and that this information directly conflicts with the opinion of Dr. Liebhaber, who never examined DuMond. We disagree.

We conclude that DuMond's own medical records do not support a diagnosis of CFS. When DuMond initially applied for STD benefits, she submitted reports from Drs. Eckerly and Heefner stating that she had CFS. However, a contemporaneous report from Dr. Baumgartner listed DuMond's diagnoses only as Hypoglycemia and Hypothyroidism. The early reports from Dr. Eckerly also speculated that the cause of DuMond's symptoms were dental problems. Dr. Eckerly's suspicions were confirmed when DuMond later treated these problems and subsequently recovered. Thus, Dr. Eckerly stated in her December letter that DuMond's fatigue was caused by immune suppression from a dental source, not by CFS. Dr. Heefner, the only other doctor to diagnose DuMond with CFS, concurred in Dr. Eckerly's assessment. Thus, Albright was correct in determining, based on DuMond's medical evidence, that DuMond did not suffer from CFS.[9]

Albright's conclusion that DuMond's medical evidence does not establish disability due to CFS is further supported by Dr. Liebhaber's report. Dr. Liebhaber, who has a specialty in allergy/immunology, evaluated all of DuMond's records and

---

[9]As for the other diagnoses listed in Dr. Eckerly's December letter, we note that DuMond does not claim that any of these were the organic disease from which she suffered – she claims only that her disability was due to CFS. See Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 382-83 (7th Cir. 1994) (ERISA does not require plan administrator to assess an "alternative diagnosis to the one [] submitted for benefits . . . much less to determine whether that alternative diagnosis constitutes a total disability").

compared them against the CDC criteria. His detailed evaluation concluded that DuMond's records did not support a CFS diagnosis under the CDC criteria.[10] Although DuMond claims that we should give more weight to the treating physician than a reviewing physician, this argument is unavailing as the records submitted by DuMond's doctors do not support a diagnosis of CFS. See Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996). Thus, having considered all the information available to Albright, we conclude that DuMond's records, combined with Dr. Liebhaber's report, support Albright's decision to deny DuMond's claim for LTD benefits under the Plan.

**B.**

DuMond also argues that she did not receive a "full and fair review" as required by ERISA and the Plan. ERISA's notice provision requires that every employee benefit plan provide adequate notice in writing of a claim denial and afford a reasonable opportunity for a full and fair review of each denial. See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(f); see also Kinkead v. Southwestern Bell Corp. Sickness and Accident Disability Benefit Plan, 111 F.3d 67, 68 (8th Cir. 1997). The purpose of this requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts. See Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1096 (8th Cir. 1992).

DuMond first argues that Albright should have granted her a hearing on her appeal, and that a failure to do so violated the full and fair review requirement. However, neither the regulations governing claims procedures under ERISA nor the terms of the Plan require a hearing. See 29 C.F.R. § 2560.503-1; J.A. at 147-50, 192-

---

[10]Dr. Liebhaber also found that Dr. Eckerly's other diagnoses were not supported by DuMond's medical records and were based on controversial medical theories.

232. Therefore, DuMond was not entitled to one. See Brown v. Retirement Comm. of the Briggs & Stratton Retirement Plan, 797 F.2d 521, 533-34 (7th Cir. 1986) (section 1133 not violated when company failed to provide hearing and adopt written rules or claims procedures; neither plan nor ERISA required such procedures); Grossmuller v. Int'l Union, United Auto. Aerospace and Agric. Implement Workers of Am., 715 F.2d 853, 858 n.5 (3d Cir. 1983) (full and fair review "does not necessarily require a trial-like atmosphere . . . . The decision-maker need not hear oral testimony; a written record will suffice." (quotation marks and citations omitted)).

We conclude that Centex provided DuMond with a full and fair review as required by ERISA and the Plan. Albright independently considered DuMond's claims and submitted her records to an independent reviewing doctor. Albright then informed DuMond by letter of the reasons for the denial, and attached Dr. Liebhaber's detailed report. Although Great-West is not a party on appeal, we also note that Great-West fully and fairly reviewed DuMond's claims. Great-West reviewed DuMond's claim three times, relying on both internal staff and an outside medical review. Great-West informed DuMond each time of the reasons for the decision, invited her to submit additional medical information, and informed her of the criteria necessary to support a CFS diagnosis which would satisfy the Plan. Thus, Centex complied with its obligation to provide a full and fair review. See Davidson, 953 F.2d at 1096 (full and fair review provided even though initial denial letters "were cursory in nature" when plan administrator reviewed claim three times, informed claimant each time of reason for denial, informed claimant he could seek reconsideration of evidence, and provided final letter with detailed explanations of reasons for denial); see also Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 382 (7th Cir. 1994) ("substantial compliance" with ERISA regulations governing full and fair review will not upset plan administrator's decision).

## III.

For the foregoing reasons, we affirm the decision of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.