Kenneth W. SMITH, Plaintiff,

v.

**BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA, Defendant.**

No. 95–3346.

United States District Court,
C.D. Illinois,
Springfield Division.

July 30, 1997.

Richard E. Steck, Rosemont, IL, for Plaintiff.

Mary Patricia Benz, Catherine J. Casey, John P. O'Malley, Chicago, IL, for Defendant.

## OPINION

MILLS, District Judge.

An ERISA claim.

Plaintiff argues that the Court should review Defendant's decision to terminate benefits *de novo*.

Defendant argues that the Court should apply an arbitrary and capricious standard.

*Bottom line:* Because the ERISA plan's language gives Defendant discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court reviews Defendant's decision to terminate Plaintiff's benefit payments under an arbitrary and capricious standard.

## I. BACKGROUND

Prior to August 11, 1989, Commonwealth Industries, Inc., employed Plaintiff as a commercial pilot. As part of their benefits' pack-

age, Commonwealth Industries provided a long-term disability plan to its employees. This plan constituted an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1001 *et seq.* Defendant is the insurance carrier which provided the long-term disability coverage for Commonwealth Industries' employees under this plan.

On or about February 12, 1989, Plaintiff suffered an inferior myocardial infarction. As a result of his inferior myocardial infarction, Plaintiff was unable to continue in his duties as a commercial pilot. Therefore, Plaintiff filed for disability benefits on July 25, 1989. On September 19, 1989, Defendant informed Plaintiff that he had been approved for long-term disability benefits and requested Plaintiff to complete an educational and vocational background form. Plaintiff received benefit payments from September 1, 1988, until March 15, 1995.

Under this group plan, Defendant agreed to pay a monthly benefit after the completion of the elimination period and after it received proof that the insured employee was totally disabled as a result of a sickness or injury which required the regular attendance of a physician. The plan defined "total disability" as:

> "Total disability" is an injury or sickness which:
>
> (1) During the elimination period, the first 24 months of benefits prevents the insured employee from doing each of the main duties of his regular occupation; and
>
> (2) after 24 months of benefits prevents the insured employee from doing each of the main duties of any occupation. Any occupation is one that the insured employee's training, education, or experience will reasonably allow.

The plan also contained a 60-month own-occupation benefit rider. The 60-month own-occupation benefit rider provided in relevant part:

> (2) Total disability for 60-month own-occupation benefit means:

> (a) during the elimination period and for the next 60 months of disability, the insured employee is:
>
> * unable to perform all the main duties of his occupation on a full-time basis because of a disability:
>
>> (1) caused by injury or sickness; and
>>
>> (2) that started while insured under this coverage; and
>
> * After 60 months of benefits have been paid, and the insured employee is unable to do each of the main duties of any occupation. Any occupation is one that the insured employee's training, education or experience will reasonably allow.

Plaintiff was eligible for the 60–month own-occupation benefit.

On January 17, 1990, Dr. Richard E. Katholi informed Defendant that Plaintiff was not totally disabled from any other work other than pilot. Dr. Katholi advised Defendant that the only limitation on Plaintiff's employment was a slight limitation of functional capacity and that he was capable of light work.

On July 23, 1990, Plaintiff informed Defendant that he had found employment in Springfield, Illinois, as an independent insurance examiner and adjuster. Between August and September 1990, Plaintiff worked 134 hours as an independent adjuster. On March 30, 1991, Plaintiff resigned his position as an independent insurance adjuster because "it was made known to me I would be expected to work in the drug- and gang-infested areas of Chicago." Subsequently, Plaintiff obtained a part-time position as a service technician repairing machines for an amusement company in Springfield, Illinois, called All–Star Music Company.

In addition to his heart condition, on March 26, 1994, Plaintiff underwent surgery to remove a disc from the lower lumbar area of his spine. In spite of his medical conditions, physicians and various assessments indicated that Plaintiff possessed the ability to perform light work, defined as the ability to lift up to 20 pounds frequently and 10 pounds occasionally, as well as stand and walk up to

six hours per day. Dr. Brian Russell also opined that Plaintiff was not totally disabled.

On November 7, 1994, Defendant informed Plaintiff that his benefit payments would cease as of August 11, 1994, based upon the information which it received from his physicians and based upon the fact that he was currently employed with another company. In response, Plaintiff requested a vocational assessment. Two separate assessments were performed. Plaintiff continued to receive benefit payments during this period, *i.e.* until March 1995. On October 17, 1995, Defendant determined that Plaintiff was no longer eligible for a continuation of benefits under the plan and ceased benefit payments to Plaintiff. Accordingly, Plaintiff initiated the above-captioned suit against Defendant for past and future long-term disability benefits due since March 1995.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Ruiz–Rivera v. Moyer,* 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987).

## III. ANALYSIS

■ Initially, the Court must determine what standard of review applies to Defendant's decision to terminate Plaintiff's benefit payments. Defendant argues that an arbitrary and capricious standard is applicable. Plaintiff argues that the Court should review Defendant's decision *de novo.*

The United States Supreme Court has held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *see also Ramsey v. Hercules, Inc.,* 77 F.3d 199, 202 (7th Cir. 1996). In the case *sub judice,* the Court finds that the language of Commonwealth Industries' long-term disability plan gives Defendant authority to determine eligibility for benefits or to construe the terms of the plan. Thus, the Court reviews Defendant's decision to terminate Plaintiff's benefit payments under an arbitrary and capricious standard.

According to the terms of the plan, the insured employee must submit proof of total disability and, upon request, proof that the total disability continues in order to receive benefit payments. The Seventh Circuit has found that language similar to the language used in the instant plan granted the administrator discretion in determining eligibility for benefit payments, and therefore, the arbitrary and capricious standard of review applied. In *Patterson v. Caterpillar, Inc.,* 70 F.3d 503 (7th Cir.1995), the Seventh Circuit opined that the language "benefits will be payable only upon receipt by the Insurance Carrier or Company of such notice and such due proof, as shall be from time to time required, of such disability" afforded the plan's administrator discretion in determining eligibility payments, and thus, an ar-

bitrary and capricious standard of review applied to the administrator's decision to terminate benefit payments. *Id.* at 505.

Likewise, in *Donato v. Met. Life Ins. Co.,* 19 F.3d 375 (7th Cir.1994), the Seventh Circuit found that the language "upon receipt of proof"; "[a]ll proof must be satisfactory to us"; and "must describe the event, the nature and the extent of the cause for which a claim is made; it must be satisfactory to us" bestowed upon the plan's administrator discretion regarding the payments of benefits, and therefore, an arbitrary and capricious standard of review applied. *Id.* at 379. Here, the plan stated that "when proof is received by [Defendant] that an insured employee is totally disabled ..., [Defendant] will pay a monthly benefit to the insured employee after the completion of the elimination period. This monthly benefit will be paid as long as total disability continues provided that proof of contingent total disability is submitted ... to [Defendant] upon request." The Court finds that this language is sufficiently similar to that found in *Patterson* and *Donato* by which we are bound. *See Bali v. Blue Cross & Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir.1989) (holding that language "determined on the basis of medical evidence satisfactory to the Committee" sufficiently granted plan administrator discretion). Accordingly, an arbitrary and capricious standard of review applies.

■■■ The fact that the plan's language does not contain an explicit grant of discretionary authority to the plan's administrator is irrelevant. *Id.; Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust,* 901 F.2d 1369, 1371 (7th Cir.1990) (holding that "magic words" conveying discretion are unnecessary). Moreover, the Seventh Circuit has repeatedly rejected Plaintiff's argument that because Defendant had an apparent conflict of interest (*i.e.* Defendant is both the plan's administrator and is responsible for incurring the costs of making the benefit payments), a *de novo* standard of review applies. *Donato,* 19 F.3d at 380 n. 3; *Van Boxel v. Journal Co. Employees Pension Trust,* 836 F.2d 1048, 1052 (7th Cir.1987). While a conflict of interest should be weighed as a factor in deter-

mining whether there is an abuse of discretion, *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956–57, it does not necessitate that a *de novo* standard of review be applied. *See* 29 U.S.C. § 1108(c)(3); *see also Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir.1995).

■■■ Having determined which is the proper standard of review, the Court must now determine whether Defendant's decision to terminate Plaintiff's benefit payments was arbitrary and capricious. Under the arbitrary and capricious standard, the administrator's decision is to be upheld as long as the decision is based upon a reasonable interpretation of the plan's language and the evidence. *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 68 (7th Cir. 1996); *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters,* 984 F.2d 762, 765 (7th Cir.1993). Several factors are to be weighed under the arbitrary and capricious standard: "the impartiality of the decisionmaking body, the complexity of the issues, the process afforded the parties, the extent to which the decisionmakers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination." *Chalmers,* 61 F.3d at 1344; *Exbom v. Central States Health & Welfare Fund,* 900 F.2d 1138, 1142 (7th Cir.1990). Based upon a reasonable interpretation of the plan's language, the evidence, and the above factors, the Court cannot say that Defendant's decision was arbitrary and capricious.

The plan's language clearly states that an insured employee may receive long-term disability payments for 60 months if that employee's disability prevents him from doing each of the main duties of *his* regular occupation. However, after receiving benefit payments for 60 months, the insured employee must offer proof that he is unable to perform each of the main duties of *any* occupation. Plaintiff has failed to point to any evidence which shows that he is incapable of performing the main duties of any occupation.

On the contrary, the record reflects that both Dr. Katholi and Dr. Russell stated that

Plaintiff was not totally disabled.[1] Moreover, the vocational assessment performed by Intracorp stated that jobs existed in Springfield, Illinois, which would provide Plaintiff with an opportunity for employment taking into account his training, education, experience, previous salary, and medical limitations. In fact, the vocational assessment performed by Rehabilitation Management, Inc., at Plaintiff's request did not state that he was incapable of performing work. Rather, the report simply concluded that there were no jobs in the Springfield, Illinois, labor market for Plaintiff.

However, as Defendant points out, simply because Plaintiff is unable to locate a suitable position is not a basis for continuing his long-term disability payments. The ERISA plan at issue is not unemployment insurance. The issue is whether Plaintiff is incapable, due to his disability, of performing the duties of any job.

Clearly, this is not the case. While Plaintiff was receiving disability payments, he worked as an independent insurance adjuster and as a part-time service technician. Plaintiff left his position as an insurance adjuster not due to any health concerns but because he refused to perform inspections in certain areas of Chicago. Therefore, the Court cannot say that Plaintiff was totally disabled from performing the duties of any job because he had performed the main duties of at least two separate vocations while receiving benefit payments.

Finally, Defendant gave Plaintiff the opportunity to submit any information which he desired to be considered by Defendant prior to making its decision to terminate his benefit payments. Accordingly, the Court cannot say that Defendant's decision to terminate Plaintiff's long-term disability payments was arbitrary and capricious.

*Ergo*, Defendant's Motion for Summary Judgment is ALLOWED. Pursuant to Federal Rule of Civil Procedure 56, summary judgment is hereby entered in favor of Defendant and against Plaintiff. Each party is to bear their own costs.

CASE CLOSED.

---

1. While Plaintiff disputes Dr. Russell's ability to determine whether he is, in fact, totally disabled as that term is used in the ERISA plan, he does not dispute that fact that such is the opinion of Dr. Russell.