**Khosro KARAMSHAHI, Plaintiff,**

v.

**NORTHEAST UTILITIES SERVICE CO., Defendant.**

**No. CIV. A. 97–30008–MAP.**

United States District Court, D. Massachusetts.

March 26, 1999.

Karen Catuogno, Rosen, Greenhut, Catugno & Low, Arnold Greenhut, Rosen, Greenhut, Catuogno & Low, Springfield, MA, for Khosro Karamshahi, Plaintiff.

Rina M. Mayman, Day, Berry & Howard, Allan C Cave, Jr., Day, Berry & Howard, Boston, MA, for Northeast Utilities Service Company, Defendant.

## MEMORANDUM REGARDING OBJECTIONS TO REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT

(Docket Nos. 32 & 34)

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff appeals a plan administrator's decision denying him Long Term Disability benefits. Plaintiff claims that he is entitled to such benefits through a disability plan provided by his employer, Northeast Utilities Service Company ("NUSCO"). As an employer-provided benefit, the plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Plaintiff sought short-term benefits covering a span of two years, which were paid. He then sought extended benefits, but the plan administrator at the time, Metropolitan Life Insurance Company ("Metlife"), denied the request. Liberty Mutual Assurance Company ("Liberty") subsequently became the plan administrator, and it too denied the claim when it reviewed Metlife's decision. After Liberty's denial, plaintiff brought this action.

Motions for summary judgment by both parties were referred to Magistrate Judge Kenneth P. Neiman. On November 20, 1998, he issued a Report and Recommendation recommending denial of summary judgment as to both parties and proposing remand to the plan administrator for further consideration. Specifically, the Magistrate Judge found that the plan administrator should have utilized the services of a vocational expert before determining that plaintiff was not permanently disabled from performing any job.

For the reasons set forth below, the court will allow defendant's motion for summary judgment. In summary, a vocational expert was not needed in this case; the facts of record, even viewed in the light most favorable to plaintiff, would be insufficient to convince any reasonable factfinder that defendant acted arbitrarily and capriciously in determining that plaintiff was not entitled to Long Term Disability benefits.

## II. *FACTUAL BACKGROUND*

The facts set forth below are taken from Magistrate Judge Neiman's Report and Recommendation. Neither party has objected to these facts.

Defendant hired plaintiff as an assistant engineer in 1981. Between 1980 and 1985, plaintiff attended night school and earned a Master's degree in Business Administration. He was promoted to engineer in 1986.

Plaintiff manifested signs of depression in 1989, as a result of which he lost much of his motivation, became easily overwhelmed and increasingly emotional. He also had difficulty sleeping and concentrating. In June of 1991, plaintiff requested and was granted a medical leave of absence, which lasted about three months, during which time he consulted a social worker. Plaintiff requested and was granted a second leave of absence in the fall of 1991, during which time he returned to his native country, Iran, to live with his mother, brother and sister. Plaintiff has not worked for defendant since June of 1991.

Upon plaintiff's return to the United States in the spring of 1992, he sought treatment from Dr. Iris Robertson of the River Valley Counseling Center ("RVCC"). Although he was diagnosed with recurrent major depression at the time, his long-term prognosis was good. Plaintiff reported that he did not feel appreciably better after being treated with one medication, Paxil. No other medications were either recommended or tried. Plaintiff terminated treatment at RVCC and subsequently returned to Iran later in 1992 and again in 1993.

As defendant's employee, plaintiff was covered by a Long Term Disability plan. Under the plan, an employee was entitled to benefits for a twenty-four month period if he or she were unable to perform the duties of his or her *regular job* due to disease, accidental injury or a pregnancy-related condition. After receiving benefits for a twenty-four month period, an employee would be considered totally disabled if he or she were unable to perform *any gainful work* for which he or she were reasonably qualified by training, education or experience. (Docket No. 33, Exhibit E)

On September 14, 1994, three years after leaving defendant's employ, plaintiff filed his initial claim for disability benefits. (*Id.*, Exhibit F) Despite the three-year delay, Metlife agreed to review the claim. By letter dated March 6, 1996, it determined that plaintiff was entitled to twenty-four months of benefits as he was unable

to perform his regular job for the two years following June of 1991. (*Id.*, Exhibit H)

On February 16, 1995, plaintiff applied for disability benefits beyond the twenty-four month period. (*Id.*, Exhibit G) Metlife requested that plaintiff undergo an independent medical examination. As reported in a letter of October 27, 1995, Dr. Kenneth Jaffe, an independent board certified psychiatrist, determined after examining plaintiff that he was not totally disabled from "any occupation." (*Id.*, Exhibit I) Another medical consultant for Metlife, Dr. Marie Rigaud, reviewed the medical data supplied by plaintiff's treating sources, and concurred with Dr. Jaffe. (*Id.*, Exhibit J) Thereafter, in the same March 6 letter that awarded plaintiff benefits for the initial twenty-four month period, Metlife denied plaintiff's claim for continued benefits and, echoing Dr. Jaffe, explained that plaintiff had a "reasonable chance of succeeding at a job with considerably less stress." (*Id.*, Exhibit H)

On May 2, 1996, plaintiff, through counsel, requested review of the denial. (*Id.*, Exhibit K) After review, by letter dated June 24, 1996, defendant's successor benefits administrator, Liberty, maintained the position originally outlined by Metlife and informed plaintiff of the decision. (*Id.*, Exhibit L) Instead of contacting defendant's benefits director, as suggested by Liberty, plaintiff filed a complaint in state district court on December 10, 1996. Defendant removed the action to this court on January 16, 1997.

## III. *DISCUSSION*

The Magistrate Judge made his recommendation in three parts. The first two parts, "Exhaustion of Administrative Remedies" and "Scope of Review," will be adopted by this court. This court, however, will decline to adopt the third section, "Review of Benefits Denial."

### A. *Exhaustion of Remedies and Standard of Review*

In this court's view, the Magistrate Judge's preliminary conclusions that (a) plaintiff is not barred from bringing this suit for failure to exhaust his administrative remedies and (b) the "arbitrary and capricious" standard applies, are both correct.

To summarize, first, defendant's notice of its decision failed adequately to inform plaintiff of his appeal rights, thus eliminating any obligation to exhaust. Second, since defendant's 1994 plan governs and affords the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the so-called "arbitrary and capricious" standard applies here. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Recupero v. New England Tel. & Tel. Co.*, 118 F.3d 820, 827 (1st Cir.1997).

### B. *Use of a Vocational Expert*

Plaintiff asserts that the terms of the policy manual require its administrator to utilize a vocational expert in order to determine suitability for future employment in any job. Plaintiff contends that the administrator's failure to consult such an expert is itself enough to render the administrator's decision arbitrary, capricious or an abuse of discretion. The central question, therefore, is whether, under the arbitrary and capricious standard, defendant had a sufficient basis to deny the claim prior to and without utilization of a vocational expert.

Whether a plan administrator abuses his or her discretion by not obtaining the opinion of a vocational expert must be decided on a case-by-case basis. *See Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir.1994). Plaintiff's claim to the contrary notwithstanding, a plan administrator need not use the services of a vocational expert in every case: "consideration of vocational evidence is unnecessary where

the evidence in the administrative record supports the conclusion that the claimant does not have an impairment which would prevent him from performing some identifiable job." *McKenzie v. General Tel. Co.,* 41 F.3d 1310, 1317 (9th Cir.1994); *see also Duhon,* 15 F.3d at 1309 (holding that "it was not an abuse of discretion for the plan administrator to conclude that Duhon was capable of performing some type of occupation without obtaining the opinion of a vocational rehabilitation expert"); *Block v. Pitney Bowes, Inc.,* 952 F.2d 1450, 1455 (D.C.Cir.1992) (concluding that plan administrator was not required to consider vocational evidence before making a final eligibility determination).

■ Furthermore, despite plaintiff's argument, defendant's claims manual does not establish a legally binding requirement that the services of a vocational expert be employed in this case. By its own terms, the claims manual offers "guidelines" only. These guidelines do not have the force of law. Unlike Social Security regulations, the guidelines have not been formally promulgated as mandates by defendant's administrator. *Cf. Rose v. Shalala,* 34 F.3d 13, 16–17 & n. 2 (1st Cir.1994) (discussing binding effect of policies set forth in Social Security regulations).

Defendant had the following facts before it when considering plaintiff's claim: 1) the examination of an independent psychiatrist, Dr. Jaffe, who found that plaintiff could perform work with "considerably less stress" than his former job with defendant; 2) the suggestions of plaintiff's own physician, Dr. Robertson, that plaintiff had a substantial chance of recovery, particularly if plaintiff continued his therapy and medications, which plaintiff did not do; 3) the observations of Dr. Marie Rigaud, who reviewed all of the evidence and concurred with Dr. Jaffe; 4) plaintiff's admission that he piloted an airplane and was a licensed pilot; 5) plaintiff's admission that he was involved in the maintenance of airplanes;[1] 6) plaintiff's lengthy trips to Iran without apparent difficulty; 7) evidence that plaintiff failed to seek medical treatment and/or failed to use medication for long periods of time, particularly when he was abroad; and, 8) plaintiff's Master's degrees in engineering and business administration.

This substantial body of evidence is more than enough to satisfy the arbitrary and capricious standard. *See Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181, 183–84 (1st Cir.1998) (noting that a decision will be upheld under the arbitrary and capricious standard where supported by substantial evidence—"evidence reasonably sufficient to support a conclusion").

Plaintiff himself has failed to bring forth any additional substantive evidence of his inability to work again. In fact, the record indicates that plaintiff has not provided defendant or this court with any evidence beyond his own doctor's suggestion that plaintiff was (at that time) unable to work. His mere reliance on the argument that defendant simply does not have enough evidence to deny the claim cannot fend off summary judgment on these facts.[2]

A vocational expert is not always required when making determinations of employability. In this case, defendant had more than enough data to deny plaintiff's

---

1. That plaintiff was admittedly flying planes and helping—to some degree—with the mechanics of planes *without* compensation, makes no difference. The issue is whether plaintiff has transferable skills. *See, e.g., Smith v. Business Men's Assurance Co.,* 971 F.Supp. 369, 374 (C.D.Ill.1997) (finding that plaintiff was not totally disabled where he "performed the main duties of at least two separate vocations while receiving benefit payments"); *see also Potter v. Connecticut Gen. Life Ins. Co.,* 901 F.2d 685 (8th Cir.1990) (per curiam); *Davis v. American Gen. Life & Accident Ins. Co.,* 906 F.Supp. 1302 (E.D.Mo. 1995). It should be emphasized, however, that the notion that the plaintiff has transferable skills related to airplanes is but one consideration.

2. In making this decision, this court has given no weight to the opinion of the commercial pilot, offered by defendant, regarding the transferability of piloting skills.

claim without using the services of a vocational expert.

## IV.  CONCLUSION

In sum, the record, even viewed in the light most favorable to plaintiff, establishes that defendant's decision was neither arbitrary nor capricious.  A vocational expert was not needed.  Accordingly, defendant's motion for summary judgment will be ALLOWED, and plaintiff's opposition to defendant's motion, which the Magistrate Judge treated as a cross-motion for summary judgment, will be DENIED.

A separate order will issue.