Janet **BREHMER**, Plaintiff–Appellant,

v.

**INLAND STEEL INDUSTRIES PENSION PLAN, Inland Steel Company and Inland Steel Industries, Inc., Defendants–Appellees.**

No. 96–3000.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1997.

Decided June 10, 1997.

John H. Zelenka, Palatine, IL, Thomas E. Mongan (argued), Tuscon, AZ, for Plaintiff–Appellant.

Lawrence L. Summers (argued), Thomas G. Hancuch, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendants–Appellees.

Before RIPPLE, MANION, and EVANS, Circuit Judges.

MANION, Circuit Judge.

In 1990, Janet Brehmer, a worker at Inland Steel's Chicago plant, sought and was granted a two-year leave of absence. At the end of her leave, she wished to return to her former position, but the company had no room for her. It later notified her that she qualified for a deferred vested pension. But she considered herself entitled to and so requested an enhanced, "Rule-of-65" pension, as well as other compensation and benefits. The company's pension plan denied her application, however, because she left on a leave of absence, not due to a permanent plant shutdown or elimination of any position or expiration of a company-directed layoff. She sued, alleging that the plan wrongfully denied her the Rule–of–65 pension, failed to comply with ERISA's regulatory claim review process, and discharged her to prevent her from attaining the more lucrative pen-

sion. Because the district court properly concluded that the plan administrator's interpretation of the pertinent plan language was not arbitrary and capricious, and Brehmer's other claims are without merit, we affirm its grant of summary judgment to the defendants.

## I.

Janet Brehmer began work for Inland Steel in May 1968. In November 1990, after 22+ years in various positions with the company, most recently as supervisor of material control in the purchasing department, she asked for a two-year leave of absence. She was frank in her written request:

> My husband moved up his retirement date from 1993 to 1991 because of his health. We are also moving out of this area to a warmer climate because of his health. I'm not sure how the relocating is going to work out. I would like to leave my job at Inland as an open option.

This request form, which Brehmer signed, contains the handwritten note: "Janet & Mgt to provide copy of documentation re: replacement understood." Two weeks later Inland Steel conditionally granted Brehmer's leave request:

> Your leave of absence is being accepted with the understanding that your current assignment and position are part of the total Material Control reorganization planned for January 1, 1991 implementation. Therefore, upon your return, job placement will be offered based upon organization needs.

Brehmer and her husband then moved to Tucson, Arizona.

While Brehmer was on leave, her department was reorganized and several positions were eliminated. Inland Steel's leave of absence procedures provided that "nothing ... shall be construed to imply a guarantee of reemployment. An employee returning from an extended Leave of Absence will receive reassignment to the job last held, whenever possible. Where this is not possible, he or she will be given consideration for any other appropriate position vacancies.... Employees who are granted an extended Leave of Absence shall be terminated unless they return to work on or before the terminal date specified in the approval for the Leave of Absence."

Twenty months into her two-year leave, Brehmer wrote to Inland Steel asking to return to work. On December 22, 1992, near the end of Brehmer's leave, Inland Steel responded to her inquiry:

> This letter is to inform you that there is no position available for you in the Purchasing Department. As you are aware, it was necessary to replace you at the time you commenced your leave of absence, and there are no vacancies at the present time.

> Since your leave of absence expires on December 31, 1992, you will be terminated from the company on January 1, 1993, unless another employment opportunity arises between now and the end of the year.

In April 1993 Inland Steel notified Brehmer that she was entitled to a deferred vested pension. Brehmer retained an attorney who wrote to Inland Steel's compensation and benefits director claiming that she was due a variety of compensation and benefits, including a "Rule–of–65" retirement pension, a more comprehensive and lucrative allowance than the deferred vested pension.[1] Section 2.7 of the plan's salaried supplement provides that the "Rule–of–65" pension is available to participants with 20 years of vesting service who are less than 55 and whose combined age and years of vesting service is at least 65 but less than 80, if their separation from employment occurs by reason of: (1) a permanent shutdown of a plant, department, or subdivision thereof; or (2) elimination of any position or job or the expiration of a company-directed layoff.

The company responded that Brehmer was not entitled to a Rule–of–65 pension because she departed the company's employ to take a leave of absence, not one of the two reasons

---

1. The record does not reveal the specifics as to how the Rule–of–65 pension benefits exceed those of the deferred vested pension.

listed. It noted that Brehmer had been specifically informed her position would be filled in her absence (the handwritten note on her leave of absence request) and that there was no assurance Inland Steel would be able to place her when her leave expired or when she was ready to return (per the leave of absence regulations). The company also stated that while positions in the purchasing department may have been eliminated during the two years Brehmer was on leave, those individuals whom the departmental reorganization impacted were identified and received the benefits to which they were entitled.

Six months later, through her attorney, Brehmer again wrote the company. She asserted that the reasons the plan gave for her discharge were pretextual in that Inland Steel in fact had reduced its work force through permanent department shutdowns. She also claimed she had not been replaced; later she would submit affidavits to that effect from other Inland Steel employees. Brehmer accused the company of not making every effort to accept her back from her leave of absence, as promised, and again requested a Rule–of–65 pension as well as other benefits.

The plan denied her requests in writing. It acknowledged she met the age and service requirements for the Rule–of–65 pension. But at the expiration of her leave of absence it was not possible to reassign Brehmer to the position she last held, and there were no other appropriate position vacancies to which she could be assigned. The plan concluded her termination was due to the unavailability of a position at the time of her anticipated return from an extended leave of absence, *not* job elimination or a permanent shutdown. The plan advised Brehmer that the plan administrator could review this decision and gave her specific directions how to have that accomplished.

Brehmer requested such a review. In June 1994, the plan administrator ruled that Brehmer was not entitled to the Rule–of–65 benefits. She reviewed the pertinent plan provisions and found compliance. She also found that "Brehmer initiated her leave of absence with knowledge she would be replaced and not guaranteed reinstatement."

Importantly, she rejected Brehmer's argument that her termination was by reason of elimination of *any* position or job. Rather, she construed the plan language to require a direct cause and effect between a job elimination and an employee's termination for a Rule–of–65 pension to be warranted: "For example, if a position above Employee X is eliminated, but Employee X is terminated because the employee in the higher position 'bumps' down, Employee X would be entitled, if otherwise eligible, to a Rule–of–65 pension. In the absence of any such direct cause and effect, however, I construe the [plan] as not providing such benefit."

Brehmer sued the Inland Steel Industries Pension Plan ("the plan"), as well as Inland Steel and its parent company, making four claims: (1) the plan violated 29 U.S.C. § 1140 by depriving her of the Rule–of–65 pension; (2) it failed to reinstate her, which was unlawful sex discrimination; (3) it failed to follow ERISA's statutory and regulatory review and notice requirements in violation of 29 U.S.C. § 1133; and (4) for "Rule of 65" pension benefits under 29 U.S.C. § 1132(a)(1)(B). Later she voluntarily dismissed count 2, the sex discrimination claim.

The defendants moved for summary judgment on the remainder of Brehmer's claims. The district court found that the plan documents conferred discretion on the plan administrator to determine pension benefits, and thus reviewed her decision under the arbitrary and capricious standard. The court concluded that the administrator's decision "simply came down to a permissible choice between plaintiff's interpretation of the language and the administrator's interpretation of the language." It found rational the administrator's interpretation that before the Rule–of–65 pension requirements could be met, a "direct cause and effect" must exist between the elimination of a position and an employee's termination. The court also rejected Brehmer's claim that the denial letters the plan sent her did not comply with the law governing claim review procedures, and her assertion that an "inference of illegal motive" should be drawn from the plan's not reinstating her, thus making her eligible for a 30–year pension or an alternative early retire-

ment package. Accordingly, the district court entered summary judgment for the plan on each of Brehmer's remaining claims.

It is undisputed that the Inland Steel Pension Fund falls within the meaning of and is governed by ERISA, 29 U.S.C. § 1002(2)(A). Thus, the district court had jurisdiction over this case pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g), and 28 U.S.C. § 1331. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A. Rule–of–65 Pension

Section 2.7 of the plan's salaried supplement states that eligibility for the Rule–of–65 pension requires that a participant's separation date occur by reason of *plant shutdown* or *elimination of a position*. The administrator determined that Brehmer's circumstances did not satisfy § 2.7, as she was terminated because there was no position available at the end of her leave of absence. The administrator interpreted the plan language to require a "direct cause and effect between a job elimination and an employee's termination" before enhanced benefits could be received; Brehmer had argued that a remote or indirect relationship between these two events was enough. The district court found the administrator's interpretation of § 2.7 permissible, not arbitrary and capricious.

■ The pension plan grants the plan administrator discretionary authority to "construe and interpret the Plan" and "decide all questions of eligibility." Accordingly, we review the administrator's benefit entitlement decision under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989); *Trombetta v. Cragin Fed. Bank for Savings ESOP*, 102 F.3d 1435, 1437 (7th Cir.1996). Under this deferential standard, the plan's decision to deny Brehmer benefits is reviewed only to determine whether it was "downright unreasonable." *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir.1994) (quoting *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990)).

Brehmer contends that when the plan administrator denied her the Rule–of–65 pension, she overlooked at least one position which Brehmer could have filled had she been allowed to return to Inland Steel. Such a fact would be material, she asserts, because Inland Steel's leave of absence procedures obligated the company to reinstate Brehmer if an appropriate position opened. Brehmer asserts that the company knew of this vacant position through a company publication, "ACCESS." She also points to an affidavit from a fellow salaried employee in her former department who testified that Brehmer was not replaced at the beginning of her leave of absence, contrary to the company's statement.

Neither item presented to the plan administrator as part of Brehmer's benefits request would have resulted in a different decision, however. Brehmer did not present evidence that the vacant clerical position would have been an appropriate position to assign a supervisor such as herself. Further, that position was posted on October 15, 1992, with an application deadline of October 21, 1992, nine weeks before her leave of absence concluded; Brehmer has not presented any evidence that the clerical position was vacant when her leave of absence expired on December 31, 1992.

Brehmer's duties may have been reassigned to other supervisors rather than assumed by a new hire or transferee when her leave started. But that would not change the fact that Brehmer's termination was due to the lack of an available position at the time of her scheduled return from the leave of absence. The company's acceptance of Brehmer's leave request mentioned the January 1, 1991 reorganization of her department and stated that "upon your return, job placement will be offered based upon organization needs." On January 1, 1993, when she wanted to return, there were no such needs. Section 2.7 creates a Rule–of–65 pension for a plan participant "whose separation date *occurs by reason of*" a position elimination. This language can reasonably be read to require a direct cause and effect between a job elimination and an employee's termination. In fact, at oral argument Brehmer's

counsel conceded that this direct cause and effect was the correct reading. The definition of "separation date" in § 1.1 of the plan buttresses this conclusion: the first day of the calendar month following the earlier of (i) the date of a participant's termination of employment (for Brehmer, January 1, 1993), or (ii) the first anniversary of the commencement of a participant's absence from work ... due to an approved leave of absence (for Brehmer, January 1, 1992). Because Brehmer's leave of absence exceeded one year, her separation date under § 1.1 was January 1, 1992, which was "caused" by her extended leave, *not* a plant shutdown or position elimination.

■ To the contrary, Brehmer asserts that because the reorganization during her leave of absence had eliminated some positions for which she qualified, her separation date should be deemed to have occurred sometime before December 31, 1993. Had even one position for which she was qualified been vacant at the conclusion of her leave, it would have allowed her to return to work. But the plan administrator's decision was consistent with the plain language of the plan: her separation did not "occur by reason of" a position elimination; it "occurr[ed] by reason of" her taking the two-year leave of absence. Brehmer has *not* presented evidence that her position in the purchasing department was eliminated during the two years she was on leave, that the company should have but did not notify her of this departmental reorganization, and that she has thereby failed to receive benefits to which she was entitled. The record evidence on this point is to the contrary: Brehmer knew about the reorganization when she applied for the leave, and the other employees impacted by the departmental reorganization received the benefits to which they were entitled.

The administrator's interpretation of this language was not "downright unreasonable." The district court was correct to conclude that the plan administrator's decision was consistent with the plan language and undisputed material facts. Given the deferential standard of review, Brehmer's claim does not succeed. When she departed for her leave of absence, Inland Steel did not guarantee she would get her old job back or that she would receive a Rule-of-65 pension. Instead, Brehmer will receive her deferred vested pension, precisely what the company did guarantee.

## B. Claim Denial Letter

The federal regulations governing a claim for benefits under ERISA require a written denial notice which must contain specific reasons and refer to the pertinent plan provisions on which the denial is based. *See* 29 C.F.R. § 2560.5031(f)(1) & (2). The written denial is also to describe any additional material or information necessary for the claimant to perfect his claim, as well as explain why such material or information is necessary. *See* 29 C.F.R. § 2560.503–1(f)(3). Brehmer contends that the claim denial letters the plan sent her did not meet this last requirement. She asserts that "not knowing what documents and information the administrator was relying on, [she] did not know what material or information would be necessary to rebut these findings and perfect her claim." Had she received the required notice of what was needed to perfect her claim, she claims she could have provided evidence that she was not replaced. Without this proper notice, she "could not appreciate the fatal inadequacy of her claim." The district court found that "no additional information was needed for the Administrator to make a determination," and thus excused any violation of the regulation as a procedural defect. We review this summary judgment decision under the familiar *de novo* standard. *Trombetta*, 102 F.3d at 1437.

■ As the district court correctly realized, it is only reasonable to conclude that 29 C.F.R. § 2560.503–1(f)(3) applies when more information is needed for a plan administrator to review the denial of a claim. Here, the administrator needed no additional information to reach her determination. The letter denying Brehmer's claim described the relevant information: the circumstances surrounding her leave of absence, her reapplication for employment, and the company's denial of her request. With access to these material facts, no unresolved material factual

questions remained.[2] Consequently, Brehmer's claim did not implicate this regulation.[3]

■ Regardless, substantial compliance with these regulations is sufficient. *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir.1992). ERISA requires that the reason a claim has been denied be communicated to the claimant and that the plan administrator afford the claimant a "full and fair review." *See* 29 U.S.C. § 1133; *Halpin*, 962 F.2d at 688–89. Thus, the question is whether Brehmer was supplied with a statement of reasons that under the circumstances of the case permitted a sufficiently clear understanding of the administrator's decision to permit effective review. *Id.* at 690. The denial letter passes this test. Brehmer's claim was not "unperfected" due to missing information, but rather was denied because of the nature of her separation. On this, the letter is clear. We also conclude this from Brehmer's response to the letter through her attorney, which specifically disputed the administrator's conclusion on this ground (and not another) and did not equivocate in its understanding of the reason for the denial.

### C. Claim that Plan "Interfered" With Brehmer's Pension Benefit

■ ERISA § 510 prohibits an employer from discharging or discriminating against plan participants "for the purpose of interfering with the attainment of any right to which such participant may be entitled under the plan." 29 U.S.C. § 1140. Brehmer claims Inland Steel terminated her employment to interfere with her attainment of a Rule–of–65 pension by failing to locate an appropriate vacant position for her at the end of her leave of absence. But the alleged unlawful objective—depriving Brehmer of the Rule-of–65 pension—could not have been accomplished by the conduct complained of—refusing to reinstate her at the end of her leave. If she had been reinstated, she would have been working, and thus ineligible for the enhanced pension. Brehmer also argues that an "inference of illegal motive" should be drawn because not being reinstated prevented her from possibly becoming eligible for a 30–year pension five years down the line, or an early retirement package offered some 2+ years later. But Brehmer has not advanced evidence that the early retirement incentive program was contemplated when her leave elapsed. Finally, she asserts that the company should have reinstated her for one day after her two-year leave of absence was completed and then terminated her, making her eligible for a Rule–of–65 pension by reason of job elimination. But for Inland Steel to have reinstated Brehmer just to terminate her under circumstances which would justify the pension she desires could have constituted a fraud on the plan. The district court correctly concluded that summary judgment was appropriate on this claim.

### III.

Considering how she departed from Inland Steel, Brehmer received the proper pension. The Rule–of–65 pension has special requirements she did not meet. Her claims that the plan's denial letter was deficient and that the plan interfered with her benefits do not pass muster. Accordingly, we affirm the district court's grant of summary judgment to the plan.

AFFIRMED.

---

**2.** Further affidavits to the effect that Brehmer "was not replaced" would not have been helpful for the reasons discussed in II.A.

**3.** Brehmer attempts to analogize her situation to that of the plaintiff in *Donato*. That case actually helps the defendants. In *Donato*, we ruled *inter alia* that MetLife's letters denying the plaintiff long-term disability benefits did not comply with regulatory specificity requirements, but that such

a failure did not preclude effective review in light of the administrator's substantial compliance with 29 C.F.R. § 2560.503–1(f). 19 F.3d at 380–.83. In so ruling, we noted that "not all procedural defects, however, will upset a fiduciary's decision." *Id.* at 382. Brehmer has not pointed out unresolved factual questions upon which further information would have been required. Thus, the same substantial compliance can be deemed to have occurred in this case.