Diana K. HIGHTSHUE,
Plaintiff–Appellant,

v.

AIG LIFE INSURANCE COMPANY,
Defendant–Appellee.

No. 96–3646.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1997.

Decided Feb. 4, 1998.

Christopher L. Garrison, Albert George (argued), Jill M. Bracken, Garrison & Kiefer, Indianapolis, IN, for Plaintiff–Appellant.

Thomas J. Grau (argued), Cynthia M. Locke, White & Raub, Indianapolis, IN, for Defendant–Appellee.

Before CUDAHY, COFFEY, and MANION, Circuit Judges.

MANION, Circuit Judge.

On three separate occasions, Diana Hightshue was exposed to an industrial odorizer while working at DowBrands. On each occasion, she was taken to the emergency room and treated for breathing difficulties. After the third exposure, she resigned. Eight months later, she sought ERISA disability payments for being permanently and totally disabled. AIG Life Insurance Co. (AIG), the ERISA claims administrator, denied her claim. Hightshue sued in federal district court, seeking to overturn the administrator's decision, but the district court granted summary judgment to AIG. We affirm.

## I.  Facts

Diana K. Hightshue worked as a customer service representative and then as an accounts payable assistant for DowBrands, a subsidiary of the Dow Chemical Company, between August 1990 and January 1993. From 1984 until joining DowBrands, Hightshue held various advertising and retail sales positions. In August 1991, Hightshue enrolled in the Dow Chemical Company's Voluntary Group Accident Plan (VGA plan). The VGA plan is an ERISA plan, funded by payroll deductions from plan participants. By the terms of the plan, DowBrands is the plan administrator, responsible for soliciting participants, providing information about the plan, and collecting premiums. The plan also designates AIG, an insurance company, as the claims administrator. AIG determines the necessary premiums, and pays or denies claims.

On June 9, 1992, mercaptan gas leaked from a holding tank located in Hightshue's vicinity at DowBrands. Mercaptan is an odorizer, added to natural gas to alert people to a possible gas leak by giving natural gas a distinct, "rotten-egg" smell. Hightshue was taken to a local emergency room and treated for breathing difficulties, loss of voice, and disorientation. She did not return to work for two weeks. During those two weeks, Hightshue was treated frequently for breathing difficulties and pain in her chest. Even after returning to work, she experienced hoarseness, coughing, wheezing, shortness of breath, and nocturnal breathing difficulty, though the symptoms became less severe.

On September 23, 1992, Hightshue was again exposed to mercaptan, and she sought immediate medical treatment. She suffered the same symptoms, and also found even light physical exertion difficult to do. She also found she had problems engaging in conversation because she "was not processing information accurately or rapidly and would even forget the subject under discussion in mid-conversation or even mid-sentence." After the September incident, Hightshue did not return to work for two months. When she returned to work on November 30, 1992, Dow moved her to accounting (in a different building).

On January 19, 1993, it happened again— Hightshue was again exposed to mercaptan. But this time was more severe. Her symptoms continue unabated. On January 29, 1993, shortly after the third incident, she resigned from DowBrands.

On October 25, 1993, Hightshue sought Total Disability or Permanent Total Disability Benefits under the VGA Plan. AIG collected medical records from various treating physicians and had Hightshue complete a questionnaire regarding her claim of disabilities. It then reviewed the file, and subsequently forwarded it to an independent company, NorthAmerican Medical Evaluations, Inc. NorthAmerican retained Dr. Jack Kaufman to review the file and make a recommendation regarding Hightshue's claim of disability. Dr. Kaufman is a board certified internist, and has frequently reviewed disability cases for the Social Security Administration. A substantial portion of his medical

practice involves the evaluation and treatment of allergies.

After reviewing the file on Hightshue, but without examining her, Dr. Kaufman concluded that Hightshue was not disabled. He found that no tests revealed any disabling condition, and that her symptoms were generally characterized as mild. He therefore concluded that Hightshue was not disabled from working.

AIG subsequently submitted Hightshue's medical file and Dr. Kaufman's report to Genex Services, Inc., another independent agency, who assigned employee Carolyn Pavol to assess Hightshue's employability. Ms. Pavol holds a master's degree in Counseling and Human Services and a bachelor's degree in psychology. She is also a Licensed Professional Counselor and a Certified Insurance Rehabilitation Specialist. Since 1992, Ms. Pavol has worked as a vocational rehabilitation consultant for Genex. Ms. Pavol reviewed the entire file, and concluded that there were jobs which Hightshue could physically perform and which were suitable for Hightshue's educational background and experience. Consequently, she concluded Hightshue was not permanently and totally disabled.

AIG reviewed the conclusions of Dr. Kaufman and Ms. Pavol, and decided to deny the claim. AIG sent a letter to Hightshue, through her attorney, explaining its decision and informing her of the opportunity to seek further review with the AIG hierarchy. Instead of appealing internally, Hightshue filed this action in federal court. After discovery, the parties filed cross motions for summary judgment. The district court granted summary judgment to AIG, and Hightshue appeals.

## II. Analysis

### A. Standard of Review

We review the district court's grant of summary judgment on ERISA claims *de novo, Klosterman v. Western General Management, Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994). If the employer's ERISA plan gives discretion to its administrator to pay or deny claims, we review the administrator's benefit entitlement decision under the arbitrary and capricious standard. *Firestone Tire & Rub-*

*ber Co. v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989); *Brehmer v. Inland Steel Industries Pension Plan*, 114 F.3d 656, 660 (7th Cir.1997).

In this case, the Plan states that the "Claims Administrator shall be entitled to use its discretion in good faith in reviewing claims submitted under this Plan, and its decisions shall be upheld absent any arbitrary and capricious action on the part of the Claims Administrator." While this language certainly suggests a deferential standard of review, Hightshue argues that the plan does not expressly give AIG the discretion to interpret plan terms, and thus our review must be *de novo*. However, as explained by the Supreme Court in *Firestone*, either a grant of discretion to pay claims or a grant of discretion to construe plan terms is sufficient to trigger a deferential standard of review. *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956 ("The validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue."). Because the Plan gives AIG, as claims administrator, the discretion to pay or deny claims, we will review its decision under the arbitrary and capricious standard, and will reverse only if it is clearly unreasonable. *Brehmer*, 114 F.3d at 660 ("Under this deferential standard, the plan's decision to deny [the claimant] benefits is reviewed only to determine whether it was 'downright unreasonable.'") (quoting *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir.1994)). If the decision made by the administrator "was made rationally and in good faith," we will not second-guess whether the decision is right. *Brown v. Retirement Committee of Briggs & Stratton*, 797 F.2d 521, 529 (7th Cir.1986).

### B. Disability Determination

AIG concluded that Hightshue was not totally and permanently disabled. The district court found that Hightshue would be totally and permanently disabled if her condition prevents her from engaging in each and every occupation or employment for compensation or profit for which she is reasonably qualified by reason of her education, training, or experience. Hightshue does not contest

this interpretation of the term "totally and permanently disabled." Rather Hightshue contends that she cannot work, or more specifically, that AIG acted arbitrarily and capriciously in concluding that there were jobs in which she could work. Therefore, we review AIG's rationale and the evidence relied upon to determine if its finding of no total and permanent disability is arbitrary and capricious.

■ In so doing, we recognize that AIG has a conflict of interest, because of its interests as both claims administrator and insurer. *See, e.g., Donato*, 19 F.3d at 379 n. 3. *Firestone* noted that the existence of a conflict of interest must be considered in determining whether the fiduciary acted arbitrarily and capriciously. 489 U.S. at 115, 109 S.Ct. at 956–57. When it is "possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Leigh v. Engle*, 727 F.2d 113, 125–26 (7th Cir.1984). Seeking independent expert advice is evidence of a thorough investigation, and provided that the fiduciary has investigated the expert's qualifications, has provided the expert with complete and accurate information, and determined that reliance on the expert's advice is reasonably justified under the circumstances, the fiduciary's decision will be respected, despite the conflict of interest. *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir.1996).

AIG collected medical records for Hightshue from at least seven different medical care providers. It conducted its own review of the medical records, and also, through NorthAmerican Medical Evaluations, retained Dr. Jack Kaufman, an independent internist and allergy medical specialist, to review Hightshue's medical records. Dr. Kaufman's review of Hightshue's medical file pointed out the attenuated nature of her condition. For example, an electroencephelogram (EEG) found "questionably mildly abnormal" [sic] brainwave patterns. Dr. Donald Layton, Ph.D., evaluated Hightshue and concluded that she was suffering from "an adjustment disorder," and advised treatment for "mild depression and anxiety." Dr. Kaufman found that "nearly every test [Hightshue] has undergone, including a brief cardiac evaluation, was normal." Based on this analysis, Dr. Kaufman concluded that "It is my belief that the numerous consultants she has seen, the plethora of tests she has undergone (all of which have turned out to be normal), and the continuous reinforcement of her symptoms by all of her care givers have combined to convince Mrs. Hightshue that she is, in fact, disabled due to the exposure to toxic fumes in the work place. The various disabling diagnoses with which she has been branded are poorly supported, self-serving, and basically untrue." AIG also had Carolyn Pavol, an independent occupational specialist, review Hightshue's case, and she determined that as long as the work environment was free of dust and pollution, Hightshue would be able to work.

Hightshue invites us to compare the qualifications of her experts with those of Dr. Kaufman. We decline. Rather, the appropriate question is whether Dr. Kaufman had sufficient experience and expertise to justify AIG's reliance on his opinion of Hightshue's medical condition. We conclude that he did. Dr. Kaufman is a board certified internist, and has performed similar reviews for Social Security disability proceedings. Further, a substantial portion of his medical practice has been devoted to the evaluation and treatment of allergies. His conclusion is supported by medical tests relating to Hightshue which reveal, at most, minor ailments. Also, AIG did not present a "partial picture" to him. Dr. Kaufman received all of the medical records obtained by AIG, and there is nothing in the record to suggest that Dr. Kaufman felt that he did not have adequate information to render a reliable opinion. In short, AIG determined that Kaufman was qualified to review Hightshue's condition, it provided Kaufman with complete and accurate information, and it found that Kaufman's conclusion was supported by the medical tests in the record. Therefore, AIG was entitled to rely on the independent evaluation made by Dr. Kaufman. Similarly, AIG could rely on the analysis of Pavol, who has a master's degree in Counseling and Human Services, is a Certified Insurance Rehabilitation Specialist, and reviewed the entire file.

Based on the evaluations performed by Dr. Kaufman and Ms. Pavol, and its own review of Hightshue's files, AIG concluded that Hightshue was not totally and permanently disabled. If Hightshue had appealed within AIG's hierarchy, AIG may have reconsidered. Our review is deferential. If Hightshue wanted *de novo* review, perhaps she should first have concentrated her efforts on petitioning AIG to revise its decision—a decision to which we owe deference. We conclude that AIG used a rational process, supported by substantial evidence, to reach the conclusion it did. Having done so, AIG cannot be said to have acted arbitrarily or capriciously.[1]

### C. Other Arguments

Hightshue was not provided with a summary plan description (SPD), as required by ERISA, 29 U.S.C. § 1024(a), until after her exposure to mercaptan. She contends the SPD does not include the same exclusions of coverage that the Plan does, and therefore, the SPD controls over the Plan.[2] For the SPD to control over the Plan, Hightshue must show "some significant reliance upon, or possible prejudice flowing from, the faulty description." *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1519 (10th Cir. 1996) (collecting cases); *see also Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1051 (7th Cir.1991) ("This requirement entitles the participant to rely on the summary plan document, and if he does the plan is estopped to deny coverage"). Hightshue cannot show reliance, because she did not review the SPD prior to her accident, or prejudice, in that her claim was evaluated on the merits.

Hightshue also argues that the failure to provide the SPD waives all exclusions of coverage. As we held in *Klosterman v. Western General Management, Inc.*, 32 F.3d 1119, 1122 (7th Cir.1994), the plan administrator, Dow Chemical Co., is the proper party to sue for failing to provide an SPD. AIG,

as the claims administrator, owed no fiduciary duty to provide the SPD to Hightshue. We see no reason to hold AIG responsible for Dow's failure to provide an SPD. Additionally, it is not at all apparent that waiving all exclusions (and therefore deeming coverage to exist) is the proper remedy for failing to provide an SPD. *See, e.g., Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir.1991) (procedural violation requires reliance, prejudice, or bad faith before monetary relief will be required).

Additionally, Hightshue contends that we should construe the plan terms against AIG. She cites for support *Phillips v. Lincoln Nat. Life Ins. Co.*, 978 F.2d 302 (7th Cir.1992), which adopted the doctrine of *contra proferentem* in ERISA cases, such that ambiguities in a document be construed against the drafter. In *Phillips*, we did construe an ambiguous term in an ERISA plan against the plan drafter, but that case involved *de novo* review. When our review is deferential, the plan administrator may conclusively interpret ambiguous plan terms. *Morton v. Smith*, 91 F.3d 867, 871 n. 1 (7th Cir.1996) ("When the administrators of a plan have discretionary authority to construe the plan, they have discretion to determine the intended meaning of the plan's terms.") Because our review in this case is deferential, we would accept any reasonable interpretation which AIG gives a plan term. We further note that Hightshue has not argued that the term "totally and permanently disabled" is ambiguous, which, we would think, would be the *sine qua non* of this argument.

Hightshue failed to raise the argument that she had a reasonable expectation of coverage to the district court, and thus waived this argument.[3] *Milwaukee Area Joint Apprenticeship Training Committee for Elec. Industry v. Howell*, 67 F.3d 1333, 1337 (7th Cir.1995). In her reply brief, Hightshue contends that her argument of reasonable expectations was inherent in oth-

---

1. In light of this conclusion, we need not address whether Hightshue's pre-existing asthmatic condition was a precipitating cause of her condition.

2. On appeal, Hightshue has chosen not to argue that the employee handbook, which she did receive and did rely upon, is inconsistent with or controls over the Plan.

3. The reasonable expectations doctrine may not even be applicable in ERISA cases. Congress established extensive statutory requirements on the provision of information, 29 U.S.C. §§ 1021–24, and may have intended these provisions to be exclusive.

er arguments she made. We disagree. The district court was not alerted to this argument by Hightshue's affidavit, or quoted sections of ERISA. And we find her reasonable expectations argument sufficiently distinct from her *contra proferentem* argument, that by making the latter, she did not preserve the former on appeal. Moreover, Hightshue has not shown that she relied on either the Plan or the Summary Plan Documents, and without reliance, her reasonable expectations are not legally cognizable. *Cf. Pension Benefit Guaranty Corp. v. Heppenstall Co.*, 633 F.2d 293, 301 (3d Cir.1980) (reliance necessary to determine when coverage ends); *Blessitt v. Retirement Plan for Employees of Dixie Engine Co.*, 848 F.2d 1164, 1173 (11th Cir.1988) (en banc) (same).

### III. Conclusion

DowBrands' ERISA plan gives AIG discretion to pay or deny claims. If AIG elects to refuse to pay a claim, we will affirm that decision unless the decision is arbitrary and capricious. After reviewing AIG's procedures, the conclusions of independent experts it retained to evaluate Hightshue's claim and the underlying medical evidence, we conclude that AIG did not act arbitrarily and capriciously in denying Hightshue's claim. There are no other grounds on which Hightshue may prevail, and therefore, we affirm the district court.