**Ramesh GARG, Plaintiff–Appellant,**

v.

**EMPLOYEE BENEFITS ADMINIS-TRATIVE COMMITTEE, in its capacity as Plan Administrator for Square D Company, Defendant–Appellee.**

No. 01–1484.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 2002.

Decided Dec. 5, 2002.

Before CUDAHY, COFFEY, and EASTERBROOK, Circuit Judges.

ORDER

Plaintiff–Appellant Ramesh Garg ("Garg") sued Defendant–Appellee Employee Benefits Administrative Committee (the "Committee"), in its capacity as Plan Administrator of Square D Company's Disability Plan (the "Plan"), for denying his claims for short-term and long-term disability benefits. The district court granted the Committee's motion for sum-

mary judgment, and Garg appeals. We affirm.

## I. FACTUAL BACKGROUND

At approximately 9:20am on Monday, November 30, 1998, Garg left Square D's facility in Schiller Park, Illinois for the last time as an employee. Hired as an electrical engineer in July 1997, Garg had repeatedly been warned by Square D that his poor job performance could lead to termination. In October 1998, one month before he was discharged, Garg received one of several performance memoranda stating that he was releasing orders at an average rate well below (*i.e.*, 50% less) than the rate required of Square D employees, and warning that if his performance did not improve he would be fired.

The morning of November 30, Garg sent a memo to his supervisor blaming his poor work performance on Square D's computer software program. That memo made no mention of any alleged disability, illness, or sickness. Indeed, it is undisputed that during his entire employment at Square D, Garg (1) never claimed that he had a disability, illness, or sickness that impacted his ability to do his job prior to being terminated by Square D; (2) never submitted any documentation from any of his physicians establishing his alleged disability during his term of employment at Square D, or (3) never requested any time off due to his alleged disability while an employee of Square D.

About five hours after Garg left Square D's facility, Garg's wife telephoned the Human Resources Manager of Square D's Schiller Park facility and requested an application for short-term disability ("STD") benefits. Square D initially denied the request, but some time thereafter sent Garg an STD claim form. Garg returned his STD application to Square D on February 1, 1999. Several months later, Garg also applied for long-term disability ("LTD") benefits under the Plan.

Under the terms of the Plan, which by its terms is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), a claimant seeking STD benefits must be (1) "unable to perform [his] job responsibilities because of an accident/sickness as determined by the disability claims administrator"; and (2) "under the regular care of a doctor." The Plan states that STD benefits end upon the termination of the recipient's employment. A claimant seeking LTD benefits on the basis he is "totally disabled" must establish that he is (1) "unable to perform each task required by [his] job"; and (2) "under the regular care of a doctor." In addition, those who are "gainfully employed" cannot be considered "totally disabled" unless they "are working under an approved rehabilitation program designed by Square D."

Pursuant to its claim procedures, Square D forwarded both of Garg's applications to its disability plan's claims administrator, the Hartford Insurance Company ("Hartford"). Hartford denied both of Garg's claims, noting essentially that as he had worked full-time until his termination, he was neither eligible for Plan benefits nor "disabled" under the terms of the Plan. In accord with the Plan's appeal rights, Garg appealed Hartford's denial of his claims to the Committee.

The Committee upheld the denial of Garg's STD claim on two grounds: (1) Garg was not covered by the Plan, as the Plan provided that coverage ended when the employee "end[ed] employment with Square D"; and (2) Garg did not meet the definition of "disabled" under the Plan while employed, as he had worked full-time until his termination, never missing work or even claiming he was disabled. The Committee also upheld the denial of

Garg's LTD claim, noting that Garg (1) was not eligible for benefits under the terms of the Plan as he "only had disability coverage through the last date of his employment"; (2) had been "gainfully employed" up until his termination (and thus *able* "to perform his job responsibilities"); and (3) had not been under a Square D-approved rehabilitation program.

On September 14, 2000, Garg filed a complaint in the district court for the Northern District of Illinois seeking review of the denial of benefits by the Committee. On November 14, 2001, the district judge filed a Memorandum Opinion and Order granting the Defendant's motion for summary judgment and denying Garg's counter motion for summary judgment. Garg timely filed this appeal, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Standard of Review

A summary judgment motion should be granted if there is "no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a grant of summary judgment *de novo*, viewing all the facts and drawing all reasonable inferences therefrom in favor of the nonmoving party. *See Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir.2002).

### B. The Administrator's Decision

■ Where, as here, the Plan gives the Committee, as Plan Administrator, the discretion and authority to grant or deny claims and to construe the Plan's provisions, we review the administrator's decision under the arbitrary and capricious standard. *See Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir.2000). Accordingly, this Court may reverse the administrator's decision only if it was clearly unreasonable. *See Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir.1998). If the plan administrator's interpretation of the Plan " 'was made rationally and in good faith,' we will not second-guess whether the decision is right." *Id.* (quoting *Brown v. Retirement Comm. of Briggs & Stratton*, 797 F.2d 521, 529 (7th Cir.1986)).

Garg does not dispute on this appeal that his coverage under the Plan terminated along with his employment. (Appellant's Br. at 32, n.7.) He argues instead that as he became disabled "several months prior to his termination from the job, the question of when coverage ends is not relevant to this claim." (Id.) We disagree. As the Committee's denial letter illustrates, the question of when coverage ended for Garg was an important element in the Committee's decision to deny Garg disability benefits. After carefully reviewing the information Garg submitted, (including medical evidence of his condition, submitted after he ended his employment),[1] the Committee decided that he was no longer covered under the Plan (*i.e.*, after his termination) and was thus not

---

**1.** This documentation included statements from Garg's doctors that Garg suffered from diabetes, congestive heart failure, angina, hypertension, impaired vision, and renal insuffi-

ciency. One of his doctors reported that Garg had become unable to work as of June 15, 1998, nearly six months before he was terminated.

entitled to either short-term or long-term disability benefits under the Plan.

Although the Committee could have reasonably denied benefits solely on the basis that any coverage Garg might have enjoyed would naturally have ended at the time his employment terminated, the Committee also examined whether Garg met the definition of "disabled" under the terms of the Plan. Applying the terms of the Plan to the facts at hand, the Committee determined that Garg failed to meet the Plan's definition of "disabled." The Committee noted that as Garg had worked full time every working day until the date he was fired (even putting in some overtime as well), and he had never attributed his poor work performance to any alleged health problem until the filing of his *post hoc* claim, the Committee found that he was not "unable to perform [his] job responsibilities" as required under the Plan. The Committee stated that it would uphold Hartford's denial of Garg's claims for both short-term and long-term disability benefits on these same grounds. We refuse to hold that this decision is unreasonable.

### C. Duty to Investigate

Garg argues that the Committee acted arbitrarily and capriciously because, when confronted with evidence from two of Garg's treating physicians during the Committee's consideration of Garg's claim, it did not seek out its own expert to opine on Garg's health status. Garg has failed to cite any case from this Circuit—or any other Circuit, for that matter—in which such a burden has been placed upon plan administrators. In fact, we have previously held that while ERISA does require a plan administrator to engage in a "'reasonable inquiry' into a claimant's medical condition and vocational skills and potential," with respect to a disability claim, it "does not require a 'full-blown' investigation." *O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 961 (7th Cir.

2001). Where, as here, a plan administrator has sufficient evidence from the claimant in the record to make a reasonable decision to deny disability benefits, there is no further obligation to inquire. *See id.* at 962.

### III. CONCLUSION

We hold that the district court's decision to grant the defendant's motion for summary judgment was proper.

AFFIRMED.