# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2776

EVELYN L. HOUSTON,

*Plaintiff-Appellee,*

*v.*

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 95 C 2389—**Joan B. Gottschall**, *Judge.*

———————

ARGUED SEPTEMBER 21, 2004—DECIDED DECEMBER 2, 2004

———————

Before EASTERBROOK, RIPPLE and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Evelyn Houston filed this action against Provident Life and Accident Insurance Company ("Provident") to challenge the termination of her long term disability benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B).[1]

---

[1] Ms. Houston's amended complaint alleged violations of 29 U.S.C. §§ 1133, 1140, 1141 and 1144; however, the district court deemed "the complaint as constructively amended by the parties to add a

(continued...)

The district court denied Provident's motion for summary judgment. After a trial upon the administrative record, the court decided that Provident's decision to terminate Ms. Houston's benefits was "arbitrary and capricious" and remanded the case to Provident with instructions. The court also denied Provident's subsequent Rule 59(e) motion to alter or amend the judgment. For the reasons set forth in the following opinion, we reverse the judgment of the district court.

# I

# BACKGROUND

## A. Facts

Ms. Houston worked as a legal secretary for the law firm of Sidley & Austin. She injured her back at work on June 14, 1993, when she lost her balance while lifting boxes of files. Ms. Houston participated in an employee welfare benefit plan that Sidley & Austin established and maintained under ERISA, 29 U.S.C. § 1001 et seq.; Provident provided the plan's long term disability insurance coverage. Ms. Houston sought treatment for her injury, which included, among other things, weekly visits to her family practice physician, Dr. Mahendra Patel, and a visit to a neurosurgeon, Dr. Alan Kaufman. She also underwent a physical evaluation by Dr.

---

[1] (...continued)
claim under § 1132," *Houston v. Provident Life & Accident Ins. Co.*, No. 95 C 2389, 2001 WL 1898591, at *4 (N.D. Ill. Dec. 21, 2000), which allows an ERISA plan participant or beneficiary to bring a civil action to recover benefits due, to enforce rights, or to clarify rights to future benefits under the terms of the plan. The court, in response to the parties' briefs, addressed only the § 1132 claim. This decision is not contested on appeal.

James W. Ryan, a consultant in orthopedic surgery, on July 20, 1993.[2] Dr. Ryan concluded that Ms. Houston had sufficient functional capacity to perform secretarial tasks:

> The patient has a grip test which showed some marginal differences between the right and the left, being a slight bit of weakness in the right. The examination was accomplished with many complaints of pain, basically she is neurologically intact. I found no spasm. She has no weakness. There is no asymmetry of the upper extremities. I do not believe she has cervical radiculopathy. She has in fact, had a cervical strain which I feel has resolved. There are no objective findings. There is a functional overlay. She can return to the work she was doing without limitation.

R.115 at 66. On August 2, 1993, after Dr. Ryan's examination, Ms. Houston had an MRI scan taken of her cervical spine.

On December 28, 1993, Ms. Houston submitted an initial claim for long term disability benefits under the policy. The policy provides that an employee is "disabled" from her *own* occupation if she is unable to earn at least eighty percent of her indexed earnings, or is unable to perform each of the material duties of the occupation that she regularly performed for her employer. R.115 at 227. In addition to her claimant's statement, Ms. Houston signed an authorization permitting the release of her medical information to Provident. She also submitted an Attending Physician's State-

---

[2] Dr. Ryan was consulted by Chubb Group of Insurance Companies ("Chubb"), Sidley & Austin's workers' compensation carrier, to evaluate Ms. Houston. Chubb denied Ms. Houston's workers' compensation claim; its letter of denial stated "[a]ccording to Dr. Ryan, you should be able to return to your regular job." R.115 at 69.

ment of Disability completed by Dr. Patel, which stated that she was disabled from her regular occupation due to a cervical disc injury. Dr. Patel later submitted additional medical records, including a clinical summary of Ms. Houston's medical condition in light of the results of her MRI, which stated, in part:

> The patient was given cervical traction, ultrasound therapy and the patient apparently had no relief. The patient was admitted during the month of the rest of 1993, at St. Margaret Hospital under my care and at this time the patient was seen by Dr. Kaufman. The patient was center and right of the central disc herniation of the sixth cervical disc with secondary compromise of the anterolateral subarachnoid space. The patient also had central bulging annulus of the fifth cervical disc. . . . Her symptoms were definitely due to the cervical disc syndrome. Dr. Kaufman had advised the patient surgery but her Workman's Compensation Insurance was not approving the further treatment and surgical intervention. . . .
>
> The patient's work injury has definitely caused the cervical symptoms radiating to both upper extremities and, in my opinion, this patient needs further work up, like a myelogram and if the myelogram is consistent with the MRI of the cervical spine, then the patient will definitely need removal of the cervical disc . . . .

R.115 at 75-76. Provident approved Ms. Houston's long term disability benefits claim on March 30, 1994.

About two and a half months later, however, Provident learned from Sidley & Austin that Chubb had denied Ms. Houston's related workers' compensation claim based upon Dr. Ryan's conclusion that she could return to work. Therefore, Provident exercised its discretion under the

policy to have Ms. Houston undergo another independent medical examination. Dr. Churl-Soo Suk, also an orthopedic specialist, examined Ms. Houston and concluded:

> I believe the patient has been having problems of the neck condition for some time which was diagnosed as herniated nucleus pulposus between C5 and C6 by MRI examination and the patient is under the care of a neurosurgeon at this time. I think further evaluation by the neurosurgeon for the cervical spine is needed.

R.115 at 99. Provident asked Dr. Suk to clarify his conclusions by answering four questions; he responded as follows:

1. Define this claimant's current diagnosis, recommend treatment program and prognosis.

A. Diagnosis: Suspected herniated nucleus pulposus between C5 & 6 and mild degenerative changes between C5 & 6.

2. In your opinion, may this person return to his/her regular occupation at this time? If currently disabled from his/her occupation, please indicate when he/she might be able to return to that type of work.

A. No. The patient should be further evaluated by a neurosurgeon.

3. May this person return to some other type of work at this time? If currently unable to return to any type of work, please indicate when he/she might be able to do so and describe findings that support total disability.

A. No.

4. Complete the attached physical capacities form.

R.115 at 96-97. On the physical capacities form, Dr. Suk indicated that Ms. Houston had a great deal of work ca-

pacity; she could: (1) stand, walk, sit and drive without restriction over a full workday; (2) occasionally lift a maximum of ten pounds; (3) use her hands for grasping, fine manipulation and repetitive motion, but not for pushing or pulling; and (4) occasionally bend, squat, kneel and balance and could frequently use a foot control. The form also indicated that she could return to "light duty" work "pending neurological evaluation." R.115 at 91.

In June 1994, Provident's in-house medical advisor concluded that Ms. Houston was not totally disabled, but he recommended that Provident obtain the neurological report referenced in Dr. Suk's report. Provident wrote to Dr. Kaufman and requested Ms. Houston's medical records, but he did not respond. On December 28, 1994, Provident's rehabilitation specialist recommended that:

> [F]urther review of the file indicates that [Ms. Houston] has very little objective info to substantiate disability. A neurosurgeon named Kaufman is alleged to advise surgery, but Dr. Kaufman has not answered your letter of 10-20-94. We have nothing from him. The IME by Dr. Suk indicates [Ms. Houston] has plenty of work capacity for her occ[upation] and fails to defend his conclusion that she should not do any work. What we do have is a clear statement of 7-20-93 by James W. Ryan, MD, Orthopedist, saying there were no objective findings. He diagnosed cervical strain "which has resolved." He felt she had functional overlay and could return to her own job w/o limitations. A report of 6-15-93 by a Dr. Mahendra A. Patel simply relates patient complaints and suggests need for "further work up, like a myelogram . . . ."
>
> I feel we should now act on the physical capacity findings of Dr. Suk and on those of other doctors (Ryan) and terminate LTD.

R.115 at 25. On January 6, 1995, Provident notified Ms. Houston that it had terminated her long term disability benefits as of December 31, 1994, because "the physical capacity findings indicate that you have the ability to perform not only your own occupation as legal secretary but also many sedentary jobs." R.115 at 164.

On January 27, 1995, Ms. Houston updated her proof of disability with a second statement of disability prepared by Dr. Patel, which indicated that she remained disabled from her own or any other occupation and that her work capacity was "as before." R.115 at 79-83. Provident's ERISA appeals committee reviewed the supplemented file and upheld the termination of benefits due to "insufficient information on which to continue disability due to [her] purported cervical problems." R.115 at 167. On March 9, 1995, Ms. Houston again supplemented her file with medical documents from Dr. Patel, and, for the first time, she submitted statements from doctors regarding a vision problem and depression. Provident's ERISA appeals committee again upheld the termination of benefits; in its view, neither her vision problem nor her depression limited her ability to work in her occupation.

## B.  District Court Proceedings

Ms. Houston filed this action under ERISA to challenge Provident's termination decision. Provident filed a motion for summary judgment, which the district court denied. The court later granted Provident's motion to limit the trial evidence to the administrative record. An open question remained as to whether the administrative record included the August 1993 MRI scan of Ms. Houston's spine; after reviewing the parties' briefs on the issue, the court concluded that the record included the MRI's *results* (as opposed to the MRI image itself).

Because the parties agreed that the policy grants Provident the discretion to determine participants' eligibility for benefits, the district court employed an arbitrary and capricious standard of review. Provident admitted, and the administrative record showed, that the decision to terminate Ms. Houston's benefits was based upon Dr. Ryan's report and the physical capacities form prepared by Dr. Suk. The court determined that it was not reasonable for Provident to rely on Dr. Ryan's report when he had not considered the medical test results of the MRI, and each doctor who had taken into account the MRI (Drs. Patel and Suk) had found Ms. Houston unable to return to work. The court similarly found that it was not reasonable for Provident to rely upon the physical capacities form prepared by Dr. Suk. The court believed that Dr. Suk's opinion, viewed in its entirety, was that Ms. Houston was disabled, required further neurological evaluation and could not return to her job or any other job. Moreover, the physical capacities form itself limited Ms. Houston to light duty work pending neurological evaluation. Thus, the court concluded that Provident's decision to terminate Ms. Houston's benefits was arbitrary and capricious.

The court held that Provident must acknowledge that Ms. Houston was disabled as of December 31, 1994 (the date her benefits terminated) and that Provident was liable to Ms. Houston for benefits for any time thereafter that she was disabled. If Provident sought to establish that her disability ended sometime after December 31, 1994, it could augment the record with additional evidence.

The court later denied Provident's Rule 59(e) motion to alter or amend the judgment.

## II

## DISCUSSION

We review the district court's legal determinations de novo and its factual findings for clear error. *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 677 (7th Cir. 2004).

### A. Provident's Decision to Terminate Benefits

#### 1. ERISA Standard of Review

When a participant of an ERISA employee benefits plan challenges the denial of benefits, we must review that denial "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir. 1998). When a plan confers such discretion upon the plan administrator or fiduciary, we shall not disturb a decision concerning eligibility for benefits unless it is arbitrary and capricious. *See Firestone Tire*, 489 U.S. at 114-15. In this case, the policy grants Provident "full, exclusive, and discretionary authority to control, manage, and administer claims." R.95, Ex.D at 25. Thus, we shall apply the arbitrary and capricious standard and shall not overturn Provident's decision to terminate Ms. Houston's long term disability benefits "as long as (1) 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome,' (2) the decision 'is based on a reasonable explanation of relevant plan documents,' or (3) the administrator 'has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.' " *Hess v. Hartford Life & Accident Ins. Co.*, 274

F.3d 456, 461 (7th Cir. 2001) (quoting *Exbom v. Cent. States, Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990)).


### 2. Benefits Termination Decision

As noted earlier, the plain language of the policy provides that a person is "disabled" from her *own* occupation if she is unable to perform each of the material duties of the occupation that she regularly performed for her employer. R.115 at 227. Notably, Provident informed Ms. Houston that she was ineligible for disability benefits under the policy because "[t]he physical capacity findings indicate you have the ability to perform not only your own occupation as a legal secretary but also many other sedentary jobs." R.115 at 163-64.[3]

Provident maintains, and we agree, that its determination had a reasonable basis when Dr. Ryan and Dr. Suk, both orthopedic specialists, had documented that Ms. Houston's back injury did not functionally limit her ability to perform the material duties of her occupation. Ms. Houston and the district court consider Dr. Ryan's opinion the least reliable because he did not account for the results of the MRI exam (his evaluation preceded the MRI). However, as Provident submits, the MRI merely aided the diagnosis of a herniated disc, and the record offers insufficient objective documentation that this medical condition rendered Ms. Houston unable to perform sedentary work. Thus, the absence of the MRI is not fatal to Dr. Ryan's functional capacity test. Sim-

---

[3] **Provident's ERISA appeals committee denied Ms. Houston's claim as supplemented on the same grounds—neither her vision problem nor depression rendered her unable to perform her own occupation. R.115 at 102-17; 168-69.**

ilarly, although Dr. Suk suspected Ms. Houston of having herniated discs and suggested further neurological evalua- tion, he more importantly found her capable of a wide range of work activity. Dr. Suk's physical capacities form indi- cated that, over a full workday, Ms. Houston could stand, walk, sit and drive without restriction; occasionally lift up to ten pounds; use her hands for grasping, fine manipula- tion and repetitive motion (but not for pushing or pulling); occasionally bend, squat, kneel and balance; and frequently use a foot control.[4] Further, the form cleared her for light duty work pending neurological evaluation.

In sum, we believe that the record here leads firmly to the conclusion that Provident reasonably concluded that Ms. Houston was not "disabled" as defined in the policy based upon Dr. Ryan's and Dr. Suk's evaluation that she had the functional capacity to perform the material duties of her occupation. *See Blickenstaff*, 378 F.3d at 678 (holding that plan administrator reasonably terminated benefits based upon functional capacity evaluation); *Sisto v. Ameritech*

---

[4] **Sidley & Austin's job description for legal secretaries, a part of the administrative record, is worth noting; it lists the "essential duties" as: (1) using word processing; (2) organizing court filings, clerical functions and work flow; (3) inputing attorney daily time; (4) coordinating attorney travel arrangements and maintaining travel expenses; (5) proofreading documents; (6) receiving and transmitting telephone calls, conference calls and messages; (7) processing mail; (8) coordinating meetings and appointments for attorneys and clients; (9) maintaining attorney calendars; (10) coordinating prompt production and delivery of legal work; (11) obtaining cases from the library; (12) maintaining client and other files; (13) performing secretarial functions, such as processing new client/matter reports and expense reports. In addition, the job description states that Sidley & Austin would make "[r]easonable accommodations" to enable employees to perform those essential duties. R.115 at 29.**

*Sickness & Accident Disability Benefit Plan*, No. 01 C 8262, 2003 WL 22472022, at *5-7, 9 (N.D. Ill. Oct. 31, 2003) (finding reasonable basis for denial of disability benefits even though MRI found two herniated cervical discs, because medical consultants concluded that the medical records did not establish that claimant was unable to perform any work); *Rivera v. Bd. of Trustees*, No. 02 Civ. 7844, 2003 WL 21710763, at *5, 9 (S.D.N.Y. July 23, 2003) (finding that denial of disability benefits was reasonable even though claimant's physician diagnosed him with a herniated disc and concluded that he was totally disabled, because independent medical examiner concluded that condition was not so severe as to limit all work-related activity), *aff'd*, 2004 WL 287154, at *2 (2d Cir. Feb. 12, 2004) (holding that substantial evidence supported the denial of benefits, including examining physician's conclusion that claimant could return to work).

### Conclusion

Accordingly, we reverse the judgment of the district court. Provident may recover its costs in this court.

REVERSED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*